TELCO COMMUNICATIONS, Plaintiff,

v.

AN APPLE A DAY, et al., Defendants.

Civil Action No. 97–542–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 24, 1997.

Ky Kirby, Swidler & Berlin, Washington, DC, for Plaintiff.

Ronald W. Stern, Alexandria, VA, for Defendant.

*MEMORANDUM OPINION*

CACHERIS, Chief Judge.

This matter is before the Court on Defendants An–Apple–A Day, Inc. ("Apple"), Christina Anne Steffen ("Steffen"), and Myles Lipton's ("Lipton") Motion to Dismiss

the Complaint filed by Telco Communications ("TELCO").[1] For the reasons stated below, this Motion is DENIED.

## I.

Defendant Apple is a Missouri corporation that claims to be the owner of the service mark "DIAL & SAVE." Apple is a telemarketer engaged in sales of consumer electronics. Defendant Steffen is the president and owner of Apple. Defendant Lipton is Steffen's husband. Plaintiff TELCO is a Virginia corporation, with a subsidiary, Dial & Save of Missouri, which is involved in selling discount long distance telephone service in Missouri. In December 1996, Apple sued TELCO in the United States District Court for the Eastern District of Missouri, alleging trademark infringement. To this Court's knowledge, TELCO's Motion to Dismiss that case is under advisement with the Missouri court.

In its Complaint in this suit, TELCO alleges that Defendants issued two press releases[2] and made calls to a securities analyst in Maryland, that these releases and calls defamed TELCO, and that TELCO's stock price was depressed as a result. Specifically, TELCO alleges five counts: (1) Defamation under Section 8.01–45 of the Virginia Code; (2) Common Law Defamation; (3) Tortious Interference with a Contractual Relationship and Reasonable Business Expectation; (4) Conspiracy to Harm Business in violation of Sections 18.2–499 and 18.2–500 of the Virginia Code; and (5) Common Law Conspiracy to Harm Business. This Court entered a Temporary Restraining Order on May 2, 1997. The Clerk of this Court entered Default on May 28, 1997. Along with denying the Motion to Dismiss as well as a Motion to Transfer to Missouri on June 12, 1997, the Court granted a Motion to Set Aside the Default because Plaintiff failed to plead damages in excess of $75,000 as required by the recently increased amount-in-controversy requirement under 28 U.S.C. § 1332.

1. On June 12, 1997, this Court denied their Motion to Dismiss in order to provide Plaintiff Telco with the opportunity to conduct discovery. This Motion is now ripe for disposition.

## II.

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of an action lacking the requisite personal jurisdiction. Determining whether personal jurisdiction exists is a two-step process which requires assessing (1) whether the particular facts and circumstances of a case fall within the forum state's statutory language and (2) whether the Due Process Clause of the Constitution would permit such jurisdiction to be asserted. *See Ellicott Mach. Corp. v. John Holland Party. Ltd.*, 995 F.2d 474, 477 (4th Cir.1993). Defendants do not assert that this Court's exercise of jurisdiction would offend Due Process. Accordingly, the subject of the Court's focus is the Virginia long-arm statute.

Virginia's long-arm statute extends personal jurisdiction to the fullest extent permitted by due process. *See English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir.1990). It may, however, be possible for the contacts of a non-resident defendant to satisfy due process but not meet the specific grasp of a Virginia long-arm statute provision. *See DeSantis v. Hafner Creations, Inc.*, 949 F.Supp. 419, 423 (E.D.Va.1996). The plaintiff always bears the burden of demonstrating personal jurisdiction once its existence is questioned by the defendant. *Mylan Labs., Inc. v. Akzo. N.V.*, 2 F.3d 56, 59–60 (4th Cir.1993).

## III.

Plaintiff contends that two sections of the Virginia Code grant this Court jurisdiction over Defendants, subsections (3) and (4) of Section 8.01–328.1(A)(3).

Section 8.01–328.1(A) (4) ("subsection (4)") permits personal jurisdiction to be exercised over a defendant who caused a tortious injury in Virginia by an act or omission outside Virginia if the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered" in Virginia.

2. Following discovery, TELCO now contends that three press releases were issued.

*See Blue Ridge Bank v. Veribanc, Inc.,* 755 F.2d 371, 373 (4th Cir.1985).

The first prong of subsection 4 requires that the tortious injury must be caused by an act or omission outside the. *Blue Ridge Bank,* 755 F.2d at 374 (citation omitted). Apple does not challenge this prong of subsection (4).

In *DeSantis v. Hafner Creations, Inc.,* 949 F.Supp. 419 (E.D.Va.1996), the Court found that subsection (4) had not been satisfied because the "persistent course of conduct" prong had not been met. The Court found "an adequate showing of an act by [defendant] outside Virginia which allegedly caused injury in Virginia." 949 F.Supp. at 427. The defendant's limited relationship with Virginia, however, prevented an exercise of jurisdiction under the second prong.

■ This case presents a more complex question of what conduct occurred. Unlike in most cases, the allegedly improper behavior transpired on the Internet.

The Court finds instructive several recent cases which have addressed the effect of the Internet and its effect of expanding jurisdictional bounds. In the cases cited by TEL-CO, more than mere posting of information occurred. For example, in one case, the site was interactive. *See e.g., Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328 (E.D.Mo. 1996). In this case, however, Lipton used a commercial entity to merely post his press release. In a recent, well-reasoned opinion from the Western District of Pennsylvania, the Court discussed the "sliding scale" that courts have used to measure jurisdiction. After discussing those instances in which a defendant enters into contracts over the Internet, the Court discussed "the opposite end ... situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction." *Zippo Manuf. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997) (citing *Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y.1996)). In *Bensusan,* the Web Site advertised the defendant's club, and left a phone number to call, nearly identical to this case. The Southern District of New York held that such contacts did not reach the "purposeful availment" requirement, and the Second Circuit recently affirmed that decision. *See Bensusan Restaurant Corp. v. King,* 126 F.3d 25 (2d Cir.1997). On nearly identical facts, however, a Connecticut district court held that maintaining a toll free number on an Internet site did provide a basis for jurisdiction. *Inset Systems, Inc. v. Instruction Set,* 937 F.Supp. 161, 165 (D.Conn.1996). Specifically, the Connecticut court reasoned that a continuous Web site constituted the purposeful doing of business in the state. *Id.* at 165.

The Court agrees with the interpretation of Internet sites and information present in *Inset Systems.* In that case, the court held that the posting of an Internet advertisement satisfied a showing of "repeatedly solicit" under the Connecticut long-arm statute. Similar language is present in subsection 4, and the Court finds that the Defendants engaged in advertising and soliciting.

The Defendants rely heavily on the Second Circuit's decision in *Bensusan.* Specifically, Defendants directed this Court's attention to the holding that a nonresident defendant must be physically present in a state in order for jurisdiction to attach. Virginia, however, rejects that position. *See Krantz v. Air Line Pilots Assoc., Int'l,* 245 Va. 202, 427 S.E.2d 326 (1993). More broadly, it is not true that a defendant be physically present in the forum state. *See Stover v. O'Connell Assocs., Inc.,* 84 F.3d 132, 136 (4th Cir.1996).

The Defendants assert that they do not conduct business in this jurisdiction. Defendants, however, admit that they were advertising their firm and soliciting investment banking assistance in posting the press releases. Accordingly, they were conducting business over the Internet. For example, if a Virginia investment bank saw their press release and called the Defendants, Defendants would not have refused the call. Thus, they should not be likened to an individual consumer who hits a certain Web site. *See*

*Pres–Kap, Inc. v. System One, Direct Access, Inc.,* 636 So.2d 1351, 1353 (Fla.App.1994).

Because they conducted their advertising and soliciting over the Internet, which could be accessed by a Virginia resident 24 hours a day, the Defendants did so regularly for purposes of the long-arm statute. Accordingly, the Court finds that posting a Web site advertisement or solicitation constitutes a persistent course of conduct, and that the two or three press releases rise to the level of regularly doing or soliciting business, thus satisfying subsection 4.

In doing so, the Court notes the similarity to a case cited by both parties, *First American First v. National Association of Bank Women,* 802 F.2d 1511 (4th Cir.1986). In that case, the Defendant sent allegedly defamatory letters written in Illinois to people throughout the country, including Virginia. The Fourth Circuit held jurisdiction existed in Virginia because the letters "were nevertheless directed in their intended effect at the activities in Virginia of Virginia residents." As in that case, the Plaintiff here is a Virginia corporation headquartered in Virginia. Further, as in that case, "though the allegedly libelous letters were not directed at the plaintiffs' actions in Virginia, there can be no doubt that the primary and most devastating effects of the letters would be felt in Virginia where [plaintiff] lives." *Id.* at 1517. The use of a computer instead of paper does not distinguish these Defendants from those in *First American First.*

Though it need not do so for purposes of this Motion, the Court also finds jurisdiction exists under subsection (a)(3) of the Virginia long-arm statute. Subsection (3) permits personal jurisdiction over a person who causes "tortious injury by an act or omission in this Commonwealth." Generally, courts have held that this subsection required that the defendant be personally physically present in Virginia when causing the injury. *See Alton v. Wang,* 941 F.Supp. 66, 67 (W.D.Va. 1996). However, courts have been moving away from that requirement. Most notably, in *Krantz v. Air Line Pilots Assoc., Int'l,* 245 Va. 202, 427 S.E.2d 326 (1993), the Supreme Court of Virginia examined whether subsection (3) was satisfied by a defendant who,

acting entirely in New York, accessed a computer "bulletin board" in Virginia and allegedly tortiously interfered with the plaintiff's contract. The Court held that, because "some further act [beyond the defendant's acts in New York] was required in [Virginia] to complete [the defendant's] act of tortiously interfering with [the Plaintiff's] prospective contract," subsection (3) was satisfied. According to the court, "[w]ithout use of ... a Virginia facility, ... there would have been no interference with [the plaintiffs'] prospective contract, the third element for a prima facie showing of this tort." 427 S.E.2d at 328 (citations omitted).

■ Defendant Lipton wrote the press releases at issue in Missouri, and placed them on Business–Wire for distribution into Connecticut, New York and New Jersey. The representative from Business Wire testified in her deposition that even if a person were to order a limited distribution range like Lipton did, however, the press release would also be distributed at no additional charge to four categories of outlets: (1) financial disclosure circuits; (2) databases, online services and Internet sites; (3) financial databases and services; and (4) BW Analyst Wire. Business Wire's advertisements, which are distributed to all customers, discuss the breadth of distribution. Included among these distribution outlets are several Virginia consumer information facilities, including America Online, which is headquartered in this District, as well as NationsBank, the Virginia Retirement System, and other investors and brokers.

■ The key issue, as both parties discuss, is whether the facts of this case fit those present in *Krantz.* As the Defendants emphasize, the Virginia Supreme Court hinged its decision on the fact that the defendant had used a Virginia facility or contacted a Virginia person as an essential act of the alleged tort. In this case, one of the allegations in the Complaint is tortious interference with business relations. The Defendant argues that this tort, if it existed, did not require the Virginia facilities because the tort "need not have to occur in Virginia." The Complaint also contained a cause of action for defamation, which certainly transpired in

Virginia, because defamation, like libel, occurs wherever the offensive material is circulated or distributed. *See Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 777, 104 S.Ct. 1473, 1479–80, 79 L.Ed.2d 790 (1984). In this case, Defendants should reasonably have known that the press releases would be received in Virginia. The Business Wire advertisement explicitly stated as much.

This Court finds that the Defendants fall under the jurisdictional net cast by *Krantz.* But for the Internet service providers and users present in Virginia, the alleged tort of defamation would not have occurred in Virginia. The conspiracy and tortious interference counts, to some degree, also required contacts in Virginia. Numerous investors and brokers are located in Virginia, and the presence of facilities in Virginia was necessary for those individuals to access the press releases. In addition, because Telco is located here, the firm absorbed the harm here, which is a necessary element to each of its claims.

The Court emphasizes that conferring jurisdiction in this case does not upset the Due Process Clause. In doing so, the Court recognizes that "foreseeability" is not sufficient, and that Defendants' contacts with this forum must be substantial enough that they would reasonably expect to be "haled into court" here. *See Young v. F.D.I.C.,* 103 F.3d 1180, 1192 (4th Cir.1997) (citation and quotation omitted). The Court finds that Defendants could reasonably have anticipated being "haled into court" here. *Cf. Stover,* 84 F.3d at 137. Defendants should have reasonably known that their press releases would be disseminated here, and they certainly knew that TELCO is based in Virginia. Their activities were sufficient to serve as an analogue for physical presence. *See Stover,* 84 F.3d at 136 (citing *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158). Accordingly, they are subject to jurisdiction here.

As a final matter, the Court finds that the two subsections of the Long–Arm Statute apply to each Defendant. Lipton wrote the releases, and contacted Business Wire, so jurisdiction clearly exists over him. In addition, he served as the Company's Rule 30(b)(6) representative and the press releases were transmitted on Apple's behalf (and contained Apple as the contact), so his actions are imputable to the company, and jurisdiction is appropriate for the firm. Finally, Steffen admitted to executing the application necessary to have the press releases distributed by Business Wire. Thus, each of the Defendants made specific and purposeful moves to place the press releases on the Internet, which is the basis for jurisdiction in this case.

Accordingly, Defendants' Motion to Dismiss is DENIED.

An appropriate Order shall issue.