**Tom THOMPSON, Plaintiff,**

v.

**HANDA–LOPEZ, INC., Defendant.**

**No. CIV.A. SA–97–CA–1008–EP.**

United States District Court,
W.D. Texas,
San Antonio Division.

March 25, 1998.

Charles R. Kaufmann, Houston, TX, for Plaintiff.

Sherry Rudisell Gonzalez, Jeffers & Banack, San Antonio, TX, for Defendant.

## ORDER

PRADO, District Judge.

On this date came on to be considered Defendant's Motion to Dismiss for Improper Venue and for Lack of Personal Jurisdiction, or in the Alternative, to Transfer the Action to the United States District Court for the Northern District of California for Improper Venue or for the Convenience of the Parties and Witnesses, filed August 22, 1997, and the Plaintiff's Response, filed September 5, 1997 in the above-styled and numbered cause. After careful consideration, this Court is of the opinion that Defendant's motion should be denied.

## BACKGROUND

Plaintiff Tom Thompson brought this action alleging breach of contract, fraud, and violations of the Texas Deceptive Trade Practices Act by Defendant Handa–Lopez, Inc. Defendant operates an arcade site on the Internet advertised as "Funscape's Casino Royale," the "World's Largest" Internet Casino. Individuals purchase game tokens ("Funbucks") with a credit card, which are used to play blackjack, poker, keno, slots, craps, easy lotto, and roulette. If the player wins he is entitled to receive $1.00 for each 100 Funbucks, in the form of either cash or prizes. Plaintiff alleges that on or about June 9, 1997, he was in Texas, playing games on Defendant's Internet casino when he won 19,372,840 Funbucks. He attempted to redeem them for $193,728.40 pursuant to the rules of Defendant's Internet site, but Defendant refused to pay the owed money. Plaintiff therefore brought this lawsuit.

Plaintiff is a Texas domiciliary while Defendant is a California corporation with its principal place of business in California. It maintains an Internet site on the World Wide Web, which can be accessed at "www.funscape.com" by any Internet user. The server for the Web site is located in California. The Web site is at present continually accessible to every Internet-connected computer in Texas and the world. Plaintiff entered into a contract to play the game on Defendant's Web site. Buried within the contract was an *inconspicuous* provision which provided that any disputes:

shall be governed by the laws of the State of California, excluding choice of law principles, and shall be resolved exclusively by final and binding arbitration in the City of San Jose, County of Santa Clara, State of California, USA under the rules of the American Arbitration Association, and, in the event of such arbitration, no punitive, special, incidental, or consequential damages may be recovered by any party and the arbitrator shall not have the power to award any such damages...

## PERSONAL JURISDICTION

■ A court must conduct a two-step analysis to establish personal jurisdiction in a diversity case. First, the court must determine that nonresident defendants can be served under the law of the forum state. Second, the court must examine whether the grant of jurisdiction under state law comports with the due process clause of the fourteenth amendment. *Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir.1985). In Texas, federal courts must only examine the second step because the Texas long arm statute extends as far as constitutionally permissible. *See U–Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977), *cert. denied* 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978); *Stuart*, 772 F.2d at 1189.

■ Due process analysis for personal jurisdiction also requires a two-step analysis. As the Fifth Circuit stated in *Stuart:*

> (a) the nonresident must have some minimum contact with the forum which results from an affirmative act on his part; (b) it must be fair and reasonable to require the nonresident to defend the suit in the forum state.

*Id.* To be amenable to suit in a forum, the nonresident defendant must have purposely conducted activities in the state which invoke the benefits and protections of the forum state's laws. The contacts with the state must put the defendant on notice "that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ Minimum contacts analysis takes two forms. Jurisdiction can be specific or general. Specific jurisdiction focuses the minimum contacts analysis on the relationship between the defendant, the forum, and the litigation. A court has specific jurisdiction when a cause of action arises out of a defendant's contact with the forum. In such cases, a single act can support jurisdiction. *Bearry v. Beech Aircraft Corporation*, 818 F.2d 370, 374 (5th Cir.1987). When the cause of action is not predicated on the defendant's contacts with the forum, the court may exercise general jurisdiction. Unlike specific jurisdiction, general jurisdiction requires more than one contact. General jurisdiction requires a set of continuous and systematic contacts between the defendant and the forum state. *Id.* Given the nature of general jurisdiction, corporations have a right to structure their affairs to avoid the general jurisdiction of a state's courts. *Id.* at 375–76.

■ When a defendant challenges personal jurisdiction, the plaintiff bears the burden of proof on the issue. *D.J. Investments v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir.1985). However, The plaintiff does not need to prove personal jurisdiction by a preponderance of the evidence. The plaintiff need only establish a prima facie case for personal jurisdiction. Furthermore, the Court must accept uncontroverted allegations in the plaintiff's complaint as true and all factual disputes in the parties' affidavits must be resolved in favor of the plaintiff. *Id.* at 545–46.

### The Internet and Jurisdiction

The Internet is a global communications network which makes it possible to conduct business throughout the world entirely from a desktop. It is currently estimated that there are over 30 million Internet users worldwide. *Zippo Manuf. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1122 (W.D.Pa. 1997) (citing *Panavision Intern., L.P. v. Toeppen*, 938 F.Supp. 616 (C.D.Cal.1996)). Despite the evolution of a global Internet, the case law concerning the permissible scope of personal jurisdiction based on the Internet is very limited. In a recent opinion from the Western District of Pennsylvania, the Court discussed the "sliding scale" that courts have used to measure jurisdiction. *Zippo*, 952 F.Supp. at 1124.[1] This sliding scale is consistent with well developed personal jurisdiction principles. At one end are situations where a defendant clearly does business over the Internet by entering into contracts with

---

1. The majority of case law concerning Internet personal jurisdiction deals with issues involving trademark infringement and unfair competition. However, the same principals apply to breach of contract and DTPA claims.

residents of other states which involve the knowing and repeated transmission of computer files over the Internet. *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir.1996). At the other end are passive Web site situations. A passive Web site that solely makes information available to interested parties is not grounds for the exercise of personal jurisdiction. *See Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295 (S.D.N.Y.1996), *aff'd*, 126 F.3d 25 (2nd Cir. 1997). Interactive Web sites, where a user can exchange information with the host computer, represent the middle ground. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity between the parties on the Web site. *See Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328 (E.D.Mo.1996).

## Minimum Contacts

 Due process limitations require that a nonresident corporate defendant have minimum contacts with the forum state such that it could "reasonably anticipate being haled into court there." *World–Wide Volkswagen*, 444 U.S. at 297. Further, maintenance of the suit in the forum state cannot offend traditional notions of "fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

 The Defendant claims that personal jurisdiction does not exist here because the Defendant does not have sufficient minimum contacts within Texas to satisfy due process. Minimum contacts are lacking, according to the Defendant, because it is a California corporation with its principal place of business in California, and its server is located in California. It does not maintain an office in Texas nor does it have a sales force or employees in the state.

The Plaintiff responds that minimum contacts comporting with due process have been satisfied because the Defendant has advertised its Casino over the Internet knowing that Texas citizens will see its advertisement. Further, it has conducted business within the state of Texas by entering into contracts with Texas citizens to play those games, which the Texas citizens played while in Texas.

 The Court agrees with Plaintiff. In the present case, Defendant Handa–Lopez has directed the advertising of its Casino toward all states. It advertises itself as the "World's Largest" Internet Casino. Defendant's argument that it "did not direct any of its advertising specifically towards Texas residents" is unpersuasive. The Internet is designed to communicate with people in every state. Advertisement on the Internet can reach tens of thousands of users within Texas alone. In *Inset Sys., Inc. v. Instruction Set, Inc.*, 937 F.Supp. 161, 163 (D.Conn.1996), the Court exercised personal jurisdiction, reasoning that, unlike newspapers, in which advertisements are often disposed of rapidly, or television and radio, in which advertisements are only broadcast at certain times, advertisements over the Internet are available continually to any Internet user.

In *Inset*, a Connecticut corporation sued a Massachusetts corporation in the District of Connecticut for trademark infringement based on the use of an Internet domain name. *Id.* at 162. The Defendant's contacts with Connecticut consisted of posting a Web site that was accessible to approximately 10,000 Connecticut residents and maintaining a toll free number. *Id.* at 165.

In *Maritz*, the Court likewise exercised jurisdiction over a corporation that advertised over the Internet. In *Maritz*, the Defendant had put up a Web site as a promotion for its forthcoming Internet service. *Maritz*, 947 F.Supp. at 1330. The service consisted of assigning users an electronic mailbox and then forwarding advertisements for products and services that matched the users' selected interests. *Id.* The Defendant planned to provide user incentives for reading the advertisements and to charge advertisers for access to the Internet users on its mailing list. *Id.* The service was not yet in operation, but users were encouraged to add their address to a mailing list to receive updates about the service. The Court found jurisdiction, reasoning that the Defendant's conduct consisted of "active solicitations" which were designed to develop a mailing list of Internet users. The Court added that it was significant that the Defendant "indis-

criminately responded to every user" who accessed the site. *Id.* at 1333–34.

Following the reasoning employed by these courts, jurisdiction should likewise be exercised in our case. In the present case there was more extensive interaction between the Defendant and the casino players than in *Maritz* and *Inset.* Defendant Handa–Lopez did more than advertise and maintain a toll free telephone number—it continuously interacted with the casino players, entering into contracts with them as they played the various games. Defendant Handa–Lopez did not exchange information with residents of various states *hoping* to use that information for commercial gain in the *future.* In the instant case, Defendant Handa–Lopez entered into contracts with the residents of various states *knowing* that it would receive commercial gain at the *present time.* Furthermore, in the instant case, the Texas Plaintiff played the casino games while in Texas, as if they were physically located in Texas, and if the Plaintiff won cash or prizes, the Defendant would send the winnings to the Plaintiff in Texas.

The present case is distinguishable from *Bensusan.* In *Bensusan,* the operator of a New York jazz club sued the operator of a Missouri jazz club for trademark infringement. The Internet Web site at issue contained general information about the Defendant's club, a calendar of events and ticket information. *Bensusan,* 937 F.Supp. at 297. However, if a user wanted to go to the club, he would have to call or visit a ticket outlet and then pick up tickets at the club on the night of the show. *Id.* The court denied to exercise jurisdiction based on the Web site alone, reasoning that it did not rise to the level of purposeful availment of that jurisdiction's laws. *Id.* at 301. *Bensusan,* however, concerned a non-interactive Web site, where a user wishing to purchase tickets could not do so from the Defendant. In the present case, the Plaintiff entered into the contract with the Defendant on the Internet, played

games with the Defendant on the Internet, and, if he won, would be sent cash or prizes to his home in Texas, in direct contrast to the level of involvement in *Bensusan.*[2]

### Fair Play and Substantial Justice

 The minimum requirements inherent in the concept of "fair play and substantial justice" may defeat the reasonableness of jurisdiction even if the defendant has the requisite minimum contacts with the forum. However, where minimum contacts have been established, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 2184–85, 85 L.Ed.2d 528 (1985). The factors to be considered are the relative burdens on the plaintiff and defendant of litigating the suit in this or another forum, the forum state's interest in adjudicating the dispute, and the interstate judicial system's interest in efficient resolution of controversies. *Id.* at 477.

 In the present case the Defendant argues that it would offend traditional notions of fairness to compel it to defend this lawsuit in Texas, especially since the contract at issue contained a clause which stated that any disputes "shall be governed by the laws of the State of California" and "shall be resolved exclusively by final and binding arbitration in the City of San Jose, County of Santa Clara, State of California."

Defendant claims that it has not purposefully interjected itself in the affairs of Texas because it has not directed any activity specifically and purposely toward the State. The Defendant adds that the Plaintiff unilaterally contacted and voluntarily entered Defendant's Web site and contest without any contact by Defendant toward Plaintiff, especially since the Plaintiff accepted the binding "forum selection clause" in the contract.

---

**2.** It is important to note that some courts hold that even a strictly passive web site is grounds for the exercise of personal jurisdiction. In *Telco Communications v. An Apple A Day,* 977 F.Supp. 404 (E.D.Va.1997), the Court held that defendants were subject to personal jurisdiction in Virginia for their action of posting allegedly defamatory press releases regarding plaintiff on passive internet site. The Court reasoned that a continuous Web site constituted the purposeful doing of business in the state. *Id.* at 406–408.

First, this clause is not a forum selection clause because it does not mandate that disputes arising from this contract be litigated in California; it merely states that disputes shall be governed by the laws of the State of California and shall be resolved exclusively by final and binding arbitration in California. This clause by no means requires, nor does it even suggest, that a lawsuit must be filed in California.

In addition, Texas clearly has a strong interest in protecting its citizens by adjudicating disputes involving the alleged breach of contract, fraud, and violations of the Texas Deceptive Trade Practices Act by an Internet casino on Texas residents. Furthermore, due regard must be given to the Plaintiff's choice to seek relief in Texas. *Kulko v. Superior Court of Calif.*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1696–97, 56 L.Ed.2d 132 (1978). These concerns outweigh the burden created by requiring the Defendant to defend the suit in Texas.

**VENUE**

■ Defendant also moves this Court to dismiss this case for improper venue, or to transfer this case for improper venue, pursuant to 28 U.S.C. § 1406(a), "on the basis that Texas Courts are improper venue for this case based upon a forum selection clause found in Defendant's Official Rules and Regulations."

Section 1406(a) provides:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

This argument is meritless because this case was not brought in an improper venue. As previously stated, the clause at issue in the contract does not prohibit a lawsuit from being brought in Texas.

■ Defendant also argues that this case should be transferred to the Northern District of California pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or

division where it might have been brought." The purpose of this statute is to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964); *Stabler v. New York Times Co.*, 569 F.Supp. 1131, 1137 (S.D.Tex.1983). Under § 1404(a), the movant has the burden of demonstrating that a change of venue is warranted. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966); *Stabler v. New York Times Co.*, 569 F.Supp. at 1137. To prevail, the moving party must show that the balance of convenience and justice weighs heavily in favor of the transfer. *Acrotube, Inc. v. J.K. Fin. Group, Inc.*, 653 F.Supp. 470, 477 (N.D.Ga. 1987). Therefore, when assessing the merits of a § 1404(a) motion, a court must determine if a transfer would make it substantially more convenient for the parties to litigate the case. *Id.*

■ The decision to transfer a pending case is committed to the sound discretion of the district court. *Van Dusen v. Barrack*, 376 U.S. at 616, 84 S.Ct. at 809; *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 74, 84 S.Ct. 185, 187, 11 L.Ed.2d 137 (1963). The criteria weighed by a court in deciding a § 1404(a) motion include:

(1) the convenience of the parties; (2) the convenience of material witnesses; (3) the availability of process to compel the presence of unwilling witnesses; (4) the cost of obtaining the presence of witnesses; (5) the relative ease of access to sources of proof; (6) calendar congestion; (7) where the events in issue took place; and (8) the interests of justice in general.

*St. Cyr v. Greyhound Lines, Inc.*, 486 F.Supp. 724, 727 (E.D.N.Y.1980); *Goodman v. Schmalz*, 80 F.R.D. 296, 300–01 (E.D.N.Y. 1978).

In the instant case, a review of the relevant factors indicates that a transfer is not warranted. The Defendant claims that all of its witnesses and evidence are located in California. While this may be true, the same applies to the Plaintiff with regard to Texas—all of his witnesses and evidence are

located in Texas. The Defendant also claims that it would be very burdensome for it to travel to Texas to defend this lawsuit. However, it would be at least as burdensome, if not more so, for the Texas Plaintiff to travel to California as it would be for the "World's largest" Internet casino to come to Texas.

Defendant further argues that this case should be transferred to California because Plaintiff, to the extent he receives a judgment against Defendant, "would be required to enforce the judgment in California." This argument is meritless because if Plaintiff receives a judgment against Defendant, he will be able to enforce the judgment in California; California certainly gives full faith and credit to judgments received in Texas.

Finally, Defendant claims that in the interest of justice this case should be transferred since "Plaintiff agreed that the forum for any dispute regarding Defendant would be in California." As previously mentioned, this clause clearly neither compels nor suggests that a lawsuit be brought in California. Furthermore, this clause did not give Plaintiff notice that California was a possible forum, since the clause was inconspicuously buried within the several page contract—Plaintiff did not notice it, nor would a reasonable person have noticed it.[3] Plaintiff entered into a contract with Defendant and played on Defendant's casinos without ever contemplating that he may be compelled to fight a potential lawsuit in California.

## Conclusion

Accordingly, it is hereby ORDERED that Defendant Handa–Lopez's Motion to Dismiss for Improper Venue and for Lack of Personal Jurisdiction, or in the Alternative, to Transfer the Action to the United States District Court for the Northern District of California for Improper Venue or for the Convenience of the Parties and Witnesses is DENIED.

---

**3.** Furthermore, it is very likely that this clause will be deemed unenforceable since it is not only inconspicuous but also contains an invalid limitation on claims and remedies.