**RANNOCH, INC., Plaintiff,**

v.

**The RANNOCH CORPORATION, Defendant.**

No. Civ.A. 99–403–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

June 30, 1999.

Todd A. Pilot, Foster S.B. Friedman, Alexandria, VA, for plaintiff.

J. Paul Williamson, Arnold, White & Durkee, Washington, DC, for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This federal and state trademark and unfair competition case presents the increasingly common question whether a defendant's Internet activities suffice constitutionally to support the exercise of personal jurisdiction. For the reasons that follow, this defendant's Internet activities fall short of the due process threshold.

## I.

Plaintiff Rannoch, Inc. ("Rannoch–Va") is a Virginia corporation engaged in the business of providing engineering services, computer systems and services in the fields of aviation, transportation, communications and navigation. According to its website, Rannoch–Va "specializes in Aerospace systems research and development[,] ... provides systems engineering support services to government and industry, and develops real-time systems for surveillance, navigation, communications, and air traffic management." Rannoch–Va owns federal trademark registrations and applications for the mark RANNOCH and variations of RANNOCH for a variety of goods and services, including "RANNOCH" combined with a fanciful "R" for engineering services, "Rannoch Corporation" combined with a design element for engineering services, and "RANNOCH" for computer hardware and software.[1]

Defendant The Rannoch Corporation ("Rannoch–Tx"), a one-person business formed in September 1997, is a Texas corporation with its sole office in Dallas, Texas. Rannoch–Tx was established to promote interest and involvement in steam railroading. Its activities are directed at individuals for whom steam railroading is a hobby. In this regard, Rannoch–Tx arranges steam railroad training vacations. Indeed, the travel arrangements associated with such vacations are currently Ran-

---

1. Rannoch–Va also claims that it owns the mark "RANNOCH" for selling advertising over the Internet. Yet, unlike its other cited marks, Rannoch–Va provides no registered number for this mark and use. Rannoch–Va also asserts that it uses its RANNOCH mark to advertise the goods and services of others through their website located at www.rannoch.com., but has provided no support for this assertion.

noch–Tx's sole, and so far, fairly modest source of income. To date, Rannoch–Tx has arranged travel for one party of fewer than 10 people, generating revenue of less than $2,500. No members of this party were from Virginia, nor were the travel arrangements made through the website.[2]

Rannoch–Va asserts that personal jurisdiction exists primarily on the basis of Rannoch–Tx's Internet website, which is accessible via the domain names *www.rannoch.org*, and *www. steam–training.com*.[3] This website makes clear that Rannoch–Tx's primary focus is "promoting interest and involvement in steam railroading among people in North America." And, in this regard, the website describes for site visitors the various steam locomotive driving courses for which Rannoch–Tx will make travel arrangements, and contains a "classifieds" section for other organizations that wish to sell or buy products related to steam locomotives.[4] Although Rannoch–Tx conducts no sales over the Internet, its website does provide (i) contact information, including its toll-free number, fax number, address, and email address, (ii) an interactive form with spaces for comments, the visitor's name, address, telephone number, fax number, and email address, (iii) hypertext links to email Rannoch–Tx directly, and (iv) an interactive form for potential advertisers to submit their classified listings.

The record also reflects that Rannoch–Tx (i) has not assisted or made arrangements for any person in Virginia in connection with the steam railroading opportunities it coordinates, (ii) has not placed any classified ads on its website for products or persons in Virginia, (iii) has done no business in Virginia, (iv) has sold no products or services in Virginia, (v) has held no meetings in Virginia, and (vi) has conducted no advertising or other promotional activity specifically directed to Virginia. More generally, the record shows that Rannoch–Tx (i) is not authorized to do business in Virginia, (ii) owns no property in Virginia, (iii) has no bank accounts in Virginia, (iv) has no telephone listings in Virginia, (v) has no employees, agents or representatives in Virginia, and (vii) does not maintain any records, documents or materials in Virginia. Moreover, it appears that Rannoch–Tx, and its president, had no knowledge of Rannoch–Va, its name, its mark, or its domain name, prior to a letter from Rannoch–Va dated July 1, 1998, almost a year after Rannoch–Tx was formed. To buttress further its claim that it had no knowledge of, and did not copy from, Rannoch–Va, Rannoch–Tx avers, without contradiction, that the name "The Rannoch Corporation" was selected as the company's name because of Rannoch–Tx's president's ancestral ties to the Scottish community Rannoch.

On these facts, Rannoch–Tx challenges the exercise of personal jurisdiction over it in Virginia.[5]

## II.

When the exercise of personal jurisdiction is challenged pursuant to Rule 12(b)(2), Fed.R.Civ.P., the question "is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by the prepon-

---

**2.** Rannoch–Tx has also discussed making travel arrangements for steam railroading adventures with roughly a dozen other people, none of whom were Virginia residents, and none of which discussions resulted in a sale.

**3.** Rannoch–Va also relies on Rannoch–Tx's admission that it has advertised in the hobby magazine, "TRAINS," which has a national circulation of roughly 200,000. Rannoch–Va suggested at the hearing on this matter that the magazine has subscribers in Virginia, but provided no evidence to that effect for the record.

**4.** The advertising is provided free, and Rannoch–Tx has no involvement in any transactions that ensue from the placement of these classifieds. The site also has sections on valuation of locomotives and personal safety considerations inherent in steam railroading activities.

**5.** Rannoch–Tx also moves to dismiss for improper venue, pursuant to 28 U.S.C. § 1391(b), an issue not reached given the resolution of the motion to dismiss for lack of personal jurisdiction.

derance of the evidence." *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). To survive the jurisdictional challenge, a plaintiff need only make a *prima facie* showing of a sufficient jurisdictional basis on the basis of the complaint and supporting affidavits. *See id.* In considering a defendant's challenge to personal jurisdiction, a court must construe all relevant allegations in the light most favorable to the plaintiff and draw the most favorable inferences for the existence of jurisdiction. *Id.*

Resolution of personal jurisdiction challenges involve a two-step inquiry. First, courts must ascertain whether a plaintiff has made a *prima facie* showing that Virginia's long-arm statute reaches the non-resident defendant given the cause of action alleged and the nature of the defendant's Virginia contacts. Second, a court must determine whether the exercise of personal jurisdiction in the circumstances is consistent with the Due Process Clause, that is, whether the long-arm statute's reach in the circumstances exceeds its constitutional grasp.[6]

As it happens, the first step of the inquiry here is not difficult. Rannoch–Va has asserted jurisdiction on the basis of four subsections of Virginia's long-arm statute, § 8. 01–328.1(A)(1)–(4).[7] Rannoch–Tx does not contest that under existing case law, its conduct would satisfy § 8.01–328.1(A)(4) of Virginia's long-arm statute, as its website promotes and advertises its services and is accessible to Virginians 24 hours a day.[8] Thus, the applicability of the other subsections need not be addressed, and the analysis proceeds directly to the constitutional prong of the inquiry.[9]

A good starting point for this inquiry is the observation that § 8.01–

---

**6.** See Bochan v. La Fontaine, —— F.Supp.2d ——, 1999 WL 343780, at *3 (E.D.Va.1999); DeSantis v. Hafner Creations, Inc., 949 F.Supp. 419, 422 (E.D.Va.1996); see also Peanut Corp. of Am. v. Hollywood Brands, Inc., 696 F.2d 311, 313 (4th Cir.1982).

**7.** Section 8.01–328.1(A) states that personal jurisdiction may be exercised over a person where the cause of action arises from the person's "(1) Transacting any business in this Commonwealth; (2) Contracting to supply services or things in this Commonwealth; (3) Causing tortious injury by an act or ommission in this Commonwealth; [or] (4) Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth."

**8.** See TELCO Communications, Inc. v. An Apple A Day, Inc., 977 F.Supp. 404, 407 (E.D.Va.1997) (concluding that "[b]ecause [defendants] conducted their advertising and soliciting over the Internet, which could be accessed by a Virginia resident 24 hours a day" the defendants conducted their business "regularly" under the terms of the long-arm statute sufficient to satisfy 8.01–328.1(A)(4)); Black & Decker Inc. v. Pro–Tech Power Inc., 26 F.Supp.2d 834, 842 (E.D.Va.1998) (Cacheris J.) (concluding that defendants "regularly solicit business in [Virginia] insofar as each of them advertises their products on World Wide.Web sites[, because t]he sites are accessible to any Virginia resident over the Internet, and they provide interested customers with the companies' e-mail addresses").

**9.** Worth noting, however, is that it is not clear that § 8.01–328.1(A)(4)'s requirement of a showing of tortious injury in Virginia can be met here, given the absence of any showing that these companies compete in any way or that Rannoch–Tx intended to capitalize on Rannoch–Va's development of the "Rannoch" name and trademarks. See Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir.1984) (factors in determining likelihood of confusion necessary for trademark infringement include similarity of goods or services provided and defendant's intent); Washington Speakers Bureau, Inc. v. Leading Authorities Inc., 33 F.Supp.2d 488, 493, 497 (E.D.Va.1999) (same). Likewise, the dilution claims are also problematical, given the rigorous requirements for establishing a famous mark. See, e.g., Washington Speakers, 33 F.Supp.2d at 502–03. (noting that famous marks must meet high standard and that marks famous only in specialized segment of market may be protected from dilution, if at all, only when diluting uses are directed narrowly at same market segment). In any event, these issues need not be resolved given the uncontested applicability of § 8.01–328.1(A)(4).

328.1(A)(4)'s "apparently extraordinary reach" in the context of Internet activities is perforce "limited significantly by the constitutional prong of the jurisdictional inquiry." *See Bochan v. La Fontaine,* —— F.Supp.2d ——, 1999 WL 343780, at *4, n. 30 (E.D.Va.1999).[10] In this regard, the Due Process Clause requires that no defendant shall be haled into court unless defendant has "certain minimum contacts [with the state] ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Although lack of physical presence in the forum is not dispositive,[11] jurisdiction is only appropriate where a defendant has " 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities.' " *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

◼ These principles, applied here, point persuasively to the conclusion that personal jurisdiction cannot constitutionally be exercised over Rannoch–Tx. Rannoch–Va has made no showing of any purposeful availment by Rannoch–Tx of Virginia, as distinct from any other state, or even any purposeful activity directed at or related to Rannoch–Va. On the contrary, Rannoch–Tx's president's uncontroverted affidavit demonstrates that he chose the name on the basis of his ancestral ties to the Rannoch community in Scotland, and was unaware of the existence of Rannoch–Va until almost a year after Rannoch–Tx was formed. In short, there appears to be nothing more than the placement of the website on the Internet with knowledge of the possibility that the site might be accessed in Virginia. This alone does not satisfy the due process jurisdictional standard, particularly where, as here, Rannoch–Va has made no showing that Rannoch–Tx, when it chose its corporate name, had any knowledge of Rannoch–Va or its trademarks.[12]

**10.** In *Bochan,* the constitutional prong of the analysis was satisfied by the purposeful direction of the defamatory remarks at a Virginia defendant regarding activities presumably occurring in Virginia. *See Bochan,* 1999 WL 343780, at *5, —— F.Supp.2d at ——; *see also Calder v. Jones,* 465 U.S. 783, 789–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (holding that California court's assertion of personal jurisdiction over Florida-based reporters did not violate due process when allegedly defamatory article that was the basis of the suit focused on the California activities of California residents); *First American First, Inc. v. National Ass'n of Bank Women,* 802 F.2d 1511, 1517 (4th Cir.1986) (concluding that Virginia court's exercise of jurisdiction did not violate Constitution when defendant knew or should have known that its alleged defamation would inflict the greatest injury upon plaintiff in Virginia, the state where he lived and conducted his business).

**11.** *See English & Smith v. Metzger,* 901 F.2d 36 (4th Cir.1990).

**12.** It is true that § 8.01–328.1(A)(4) is an assertion of specific jurisdiction, and thus "does not require the 'systematic and continuous contacts' needed for the constitutional exercise of general jurisdiction," because "Virginia has a legitimate interest in providing a forum for claims based on conduct causing harm within its borders." *See Robinson v. Egnor,* 699 F.Supp. 1207, 1213–14 (E.D.Va. 1988) (citing *First American First, Inc. v. National Association of Bank'Women,* 802 F.2d 1511 (4th Cir.1986)). But less than "continuous and systematic" contacts will satisfy the Due Process Clause, even in the context of specific jurisdiction, only when the activity out of which the claim arises is purposefully targeted at the forum state. *See Robinson,* 699 F.Supp. at 1214 ("an out-of-state defendant should reasonably expect to appear before a Virginia court when his 'purposefully targeted conduct' has caused harm in Virginia."); *First American First,* 802 F.2d at (in explaining why less than systematic and continuous contacts are sufficient in assertions of specific jurisdiction, noting that "an out-of-state defendant should more reasonably expect to be haled into a foreign state's courts when his purposefully targeted conduct has caused harm within that state's borders. . . .") Thus, while "systematic and continuous contacts" in the forum state may not be necessary under § 8.01–328.1(A)(4), some element of purposeful direction or availment is constitutionally necessary. *See Burger King,* 471 U.S. at 474, 105 S.Ct. 2174 ("[T]he constitutional touchstone remains whether the defendant

As the district court noted in *Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295, 301 (S.D.N.Y.1996), *aff'd* 126 F.3d 25 (2d Cir.1997), "[c]reating a site, like placing a product into the stream of commerce, may be felt nationwide—or even worldwide—but, without more, it is not an act purposefully directed toward the forum state."

This principle also finds expression in a recent, essentially similar trademark infringement case from this district, *Black & Decker Inc. v. Pro–Tech Power Inc.* There, the district court likewise found that the defendant's Internet advertising activities satisfied the statutory prong of the jurisdictional analysis, but concluded that those activities did not satisfy the constitutional prong of the analysis. Specifically, the court concluded that the mere fact that the defendants advertised on the Internet and manufactured tools with the knowledge that some would be sold in Virginia was insufficient to satisfy the constitutional requirements because, essentially, such conduct amounts to nothing more than " '[t]he placement of a product into the stream of commerce,' " and thus " 'is not an act ... [that is] purposefully directed toward the forum State.' " *See Black & Decker*, 26 F.Supp.2d at 843 (quoting *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 944 (4th Cir.1994)). Here, as in Black & Decker, Virginia's long-arm statute is satisfied, but the requirements of the Due Process Clause are not, as there is nothing suggesting that Rannoch–Tx should reasonably have anticipated being haled into

court in Virginia, any more than any other state. See *Burger King*, 471 U.S. at 474, 105 S.Ct. 2174 (" '[T]he foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are >such that he should reasonably anticipate being haled into court there.' ").

In opposition to this conclusion, Rannoch–Va relies chiefly on three cases, two of which are factually distinguishable.[13] The third, *Inset Systems, Inc. v. Instruction Set, Inc.*, 937 F.Supp. 161 (D.Conn. 1996), is an early case that persuasively addresses the application of Connecticut's long-arm statute, a statute similar to Virginia's, in the context of Internet activities.[14] Yet, Inset's due process analysis is less persuasive. Despite its acknowledgment that the defendant there "directed its advertising activities via the Internet and its toll-free number toward not only the state of Connecticut, but to all states," it nonetheless concluded that the defendant "purposefully availed itself of doing business within Connecticut" because its Internet advertising and toll-free numbers were designed to communicate with people and their businesses in every state, were capable of reaching more than 10,000 people in Connecticut, and were continuously available 24 hours a day. *See Inset Systems*, 937 F.Supp. at 165. Significantly, the Inset Systems court did not, however, identify any facts that would distinguish the defendant's "purposeful availment" of Connecticut from its availment of any state in

purposefully established 'minimum contacts' in the forum State."). Here, neither mere use of a similar name to that of a Virginia company nor the creation of the website, without more, is activity purposefully directed at Virginia.

**13.** *See Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328, 1333 (E.D.Mo.1996) (concluding that jurisdiction existed on basis of Internet activity where defendant transmitted information regarding its services into [the forum state] approximately 131 times); *TELCO*, 977 F.Supp. at 408 (finding jurisdiction constitutionally asserted where defendants "should have reasonably know that their

press releases would be disseminated here, and they certainly knew that [plaintiff] is based in Virginia"). Here, in contrast to *Maritz* and *TELCO*, there is no evidence that the Internet activities were directed at a forum resident; specifically, there is no evidence that Rannoch–Tx knew that Rannoch–Va existed, much less that Rannoch–Va was based in Virginia, nor any evidence of actual use of the website by any Virginia resident.

**14.** *See, e.g., TELCO*, 977 F.Supp. at 405 (analyzing the application of § 8.01–328.1(A)(4) and concluding that "[t]his Court agrees with the interpretation of Internet sites and information present in Inset Systems.").

the country. Thus, "following the rationale of Inset Systems would subject anyone who posted information on the Web to nationwide jurisdiction." *See Barrett v.. Catacombs Press*, 44 F.Supp.2d 717, 727 (E.D.Pa.1999) (declining to follow *Inset Systems*).[15] Such an expansive approach to personal jurisdiction exceeds constitutional bounds.

In summary, Rannoch–Tx's Internet website activities are alone constitutionally insufficient to support personal jurisdiction in Virginia. To conclude otherwise here, as in *Black & Decker*, would give the Virginia long-arm statute a reach beyond its constitutional grasp.

·An appropriate Order has issued.[16]

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

---

**15.** *See also Millennium Enterprises, Inc. v. Millennium Music, LP*, 33 F.Supp.2d 907, 921 (D.Or.1999) (declining to follow Inset and Maritz and finding these cases lacking "the principle that a defendant must 'purposefully direct' its activities at or take 'deliberate action' in or create 'substantial connection' with the forum state so as to provide 'fair warning' that such activities may subject defendant to jurisdiction in a distant forum").

**16.** In the alternative to dismissing for lack of personal jurisdiction, Rannoch–Tx requested that the case be transferred to the United States District Court for the Northern District of Texas, Dallas Division. At the hearing on this matter, Rannoch–Va was given the choice of dismissal without prejudice, or transfer to the Northern District of Texas. By praecipe dated June 15, 1999, Rannoch–Va indicated its preference for dismissal, which was so ordered on June 21, 1999.