138

## CIRCUIT COURT OF FAIRFAX COUNTY

iDefense, Inc., et al.

v.

The Dick Tracy Group,
P.L.C., et al.

January 9, 2002

Case No. (Law) 196588

BY JUDGE HENRY E. HUDSON

This matter was before the Court on December 12, 2001, on Defendant's Plea in Bar based upon this Court's lack of personal jurisdiction. The Court heard testimony and reviewed the transcripts of depositions. The Court heard final arguments by counsel on January 7, 2002.

Until it went bankrupt, iDefense, Inc. ("iDefense"), a Delaware corporation with its principal place of business in Virginia and a subsidiary in the United Kingdom, was a start-up security company that specialized in cyber-threat intelligence. Experiencing a "tight cash position," iDefense sought to obtain an infusion of venture capital. To that end, it entered into negotiations in February of 2001 with British entities The Dick Tracy Group, P.L.C. ("DTG"), and its financial advisor, RedStar Management, Inc. ("Red Star"), regarding the proposed acquisition of a controlling interest in iDefense's subsidiary in the UK (hereinafter "iDefense-UK") by DTG. The goal of the negotiations, according to iDefense, was to expand its operations in

the United Kingdom by merging with DTG, an existing security company and to obtain an immediate influx of capital to fund its parent company in the United States.

Following preliminary discussions, Colin Dobson, Chief Executive Officer of DTG, called Brian Kelly, President of iDefense, in Virginia, and expressed an interest in meeting Kelly in Virginia to discuss "an investment." Kelly testified that, when he invited Dobson to iDefense headquarters, he stressed that Dobson should be prepared to do business.

According to the testimony, Dobson and Tony Harding of RedStar, traveled from the United Kingdom to iDefense headquarters in Fairfax, Virginia, for the sole purpose of negotiating a joint venture. Dobson described the meeting, which occurred on March 12, 2001, as a discussion of the synergy of the two companies. Harding testified that his purpose at the meeting was simply to advise DTG on whether iDefense-UK was a wise acquisition. The meeting culminated in the execution of a document entitled "Heads of Agreement" (hereinafter "HOA"), which provided that, subject to the approval of both companies' boards, DTG would purchase a majority interest in iDefense-UK for $1.5 million to be satisfied by $750,000.00 in cash and the issuance of stock in DTG valued at $750,000.00 at the current issuance price. DTG was to make the payments according to a payment schedule specified in the HOA. The HOA also contained a stipulation that Virginia law would govern its terms.

Although Harding denied in his deposition that he was an active participant in negotiating the HOA, the preponderance of the evidence is to the contrary. Clive O'Grady, Corporate Counsel for Defense, described Harding as fully engaged in the discussions. This was corroborated by the testimony of other iDefense witnesses. Harding's representations as to DTG's ability to perform were central to the underlying agreement.

After the meeting in Fairfax, a series of communications in the form of letters and emails were exchanged between Kelly and Dobson regarding the status of the formulated business plan. According to Dobson's testimony, about thirteen communications were exchanged. Andrew Peters of RedStar testified that he sent several emails to officers of iDefense concerning the availability of funds discussed at the March 12th meeting. Ultimately, the deal degenerated in its entirety without DTG making any of the payments. iDefense subsequently went bankrupt and filed the instant action alleging seven counts against the Defendants, including fraud and deceit, conspiracy to commit fraud, statutory conspiracy under Va. Code §§ 18.2-499 and 18.2-500, breach of contract, and conversion.

In support of their plea in bar, Defendants argued that this Court could not assert personal jurisdiction over them for the purpose of adjudicating any of the counts alleged in Plaintiff's Motion for Judgment. They contend that their activities did not come within the purview of the Virginia long-arm statute, Va. Code § 8.01-328.1, and that assertion of jurisdiction by this Court would offend the Due Process Clause of the United States Constitution. The Court also notes that Defendants raised two merit-based arguments in their memoranda in support of their plea in bar, one related to the theory underlying the conspiracy counts and another related to the alleged invalidity of the HOA as a contract. The Court declined to hear argument on those issues and will not address them here, as they would be more properly resolved on demurrer. *Norfolk and Ocean View Ry. v. Consolidated Turnpike Co.*, 111 Va. 131, 137 (1910).

The burden of proving personal jurisdiction rests upon the Plaintiff. *Mylan Laboratories, Inc. v. Akzo*, 2 F.3d 56, 60 (4th Cir. 1993). Plaintiff must prove that personal jurisdiction by the Court would be proper by a preponderance of the evidence. *Id.*, 2 F.3d 56. Personal jurisdiction is a two-step inquiry consisting of both statutory and constitutional components.

The Court must initially determine whether jurisdiction can be assumed under the long-arm statute, the function of which "is to assert jurisdiction over nonresidents who engage in some purposeful activity in Virginia, to the extent permissible under the Due Process Clause." *Nan Ya Plastics Corp. v. DeSantis*, 237 Va. 255, 259 (1989). To make that determination, the Court must consider all of the elements of the asserted cause of action in order to determine the statute's scope. *Krantz v. Air Line Pilots Association, International*, 245 Va. 202 (1993). In other words, each count must have independent jurisdictional moorings.

If the statutory prong is met, the Court must then determine whether an exercise of jurisdiction over the Defendants would satisfy the Due Process Clause of the Fourteenth Amendment. Due process is satisfied where the Defendants were given fair and adequate notice of the proceedings against them, and where exercise of jurisdiction would be fair under the circumstances. The standard of fairness developed in the case law is two-fold, consisting of separate minimum contacts and reasonableness tests. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In assessing whether minimum contacts exist, the Court must consider the nature and quantity of the Defendants' contacts with the forum state and the connection of those contacts with the cause of action. *Id.* at 318. Furthermore, the Court must examine the forum state's interest in providing its citizens with a vehicle to address legal grievances. *McGee v. International Life Ins. Co.*, 355 U.S.

220, 223 (1957). The Court must also determine whether in establishing contacts in the forum state, the Defendants purposefully availed themselves of the forum state. *Hanson v. Denkla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1951). Once the Court determines that minimum contacts have been established, it must then decide whether its exercise of jurisdiction would be reasonable by assessing the burden on the Defendants of litigating in an inconvenient forum. *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 113 (1987).

In the resulting analysis, the Court must examine each of the seven counts individually to assess whether the requirements of the long-arm statute are met. Plaintiff argues that Counts I (Fraud), II (Conspiracy), III (Conspiracy to Commit Fraud), VI (Fraud), and VII (Conversion) satisfy Va. Code § 8.01-328.1(A)(3) (permitting a Court to exercise personal jurisdiction over a person as to a cause of action arising from his causing tortious injury by an act or omission in the Commonwealth). All of these Counts stem at least in part from the alleged communications and representations made to Plaintiff iDefense by Defendants at the meeting on March 12, 2001, in Fairfax, Virginia. On the other hand, Defendants contend that because Plaintiff did not allege that all of the elements of the alleged torts were committed by the Defendants while they were physically present in Virginia, this Court lacks personal jurisdiction over those claims. The Court disagrees.

In *Telco Communications v. An Apple A Day*, 977 F. Supp. 404 (E.D. Va. 1997), the Court, commenting on Va. Code § 8.01-328.1(A)(3), stated "generally, courts have held that this subsection required that the defendant be personally physically present in Virginia when causing the injury. . . . However, courts have been moving away from that requirement, most notably, in *Krantz v. Air Line Pilots Assoc., Int'l*, 245 Va. 202 (1993)." In *Krantz*, the Virginia Supreme Court reversed the trial court's dismissal of the case for lack of personal jurisdiction over a New York defendant. In that case, the plaintiff alleged that defendant tortiously interfered with his employment contract by sending certain derogatory emails from New York into a computer system called ACCESS, which was operating in Virginia. The court observed that "without the use of ACCESS, a Virginia facility, Nottke could not have obtained those recruits, and there would have been no interference with Krantz's prospective contract. . . ." *Id.* at 206. The Court acknowledged that the mere sending of an email by the defendant into the forum state would not alone have sufficed to confer personal jurisdiction and concluded that the Defendant also used the services of other people in Virginia to execute his plan of tortious interference. Thus, the Supreme Court upheld jurisdiction, finding that the New York defendant's acts in Virginia facilitated the consummated tort.

A similar analysis applies in the immediate case. iDefense asserts the position that the Defendants used the meeting in Fairfax, the representations made, and the information obtained to further their conspiracy, as well as the fraud and conversion allegedly perpetrated against the Plaintiff. These actions by the Defendants, at least in part, furthered their tortious objective. As in *Krantz*, the fact that the Defendants were physically present elsewhere when they completed the alleged torts does not divest the Court of jurisdiction. With respect to the fraud count, iDefense argued that the completed fraud occurred at the meeting in Fairfax. Defendants' statements that they had the funding to finance the transaction and that they would make the payments according to the terms of the payment schedule agreed upon in the HOA were the core representations underlying the fraud count.

The Defendants cite a number of cases where Courts have found no personal jurisdiction where foreign defendants merely sent emails or shipped products into the forum state. *Alton v. Wang*, 941 F. Supp. 66, 67 (W.D. Va. 1996); *DeSantis v. Hafner Creations, Inc.*, 949 F. Supp. 419, 424 (E.D. Va. 1996). In *Alton*, the Court found that no personal jurisdiction existed because no act related to the tort was physically committed in the forum state. Rather, defendant's acts consisted entirely of emails into the forum state. In the case at bar, however, the evidence disclosed that Defendants committed allegedly tortious acts and parts of tortious acts *while physically present in Virginia*. Therefore, this case is distinguishable from those cases cited by the Defendants. The Court thus finds personal jurisdiction over all the Defendants to be proper under Va. Code § 8.01-328.1(A)(3) for the purpose of adjudicating Counts I, II, III, VI, and VII.

Turning to Counts IV and V, alleging breach of contract, the Court is convinced from the evidence that the Defendants named in these counts were clearly transacting business in Virginia. A single business transaction can be sufficient to permit the exercise of jurisdiction under the Virginia long-arm statute. *Associate Financial Services v. McPeek*, 222 Va. 176, 179, 278 S.E.2d 847 (1981). The Defendants traveled to Virginia, attended a meeting with iDefense, and executed an agreement laying out the manner in which DTG would acquire a majority interest in iDefense-UK. Because the HOA was subject to board approval, Defendants argued that there was no binding contract, as the HOA was merely an agreement to agree. For jurisdictional purposes, however, the question is not whether a valid contract was executed in Virginia, but rather whether a general business transaction occurred. Regardless of whether the HOA was an agreement to agree or an enforceable contract, the Court nevertheless finds that it constituted a business transaction in Virginia. The making of a contract in Virginia, even if it is to be

substantially performed outside of Virginia, is sufficient to constitute the transaction of business. *I. T. Sales v. Dry*, 222 Va. 6, 8 (1981). Therefore, the Court finds personal jurisdiction to be proper over the Defendants named in Counts IV and V pursuant to § 8.01-328.1(A)(1) (permitting the exercise of personal jurisdiction over a person where the cause of action arises from transacting any business in the Commonwealth).

The Court further finds that the constitutional standard for asserting personal jurisdiction over the Defendants in this case has also been satisfied. The first facet of the Due Process analysis appears undisputed, as none of the Defendants argued a defect in notice. In assessing whether the minimum contacts required to fulfill the fairness test exist, the Court must examine the individual facts of each case. *Glumina Bank v. D. C. Diamond Corp.*, 259 Va. 312, 317 (2000). The Defendants in this case, all British citizens, traveled to the United States to attend a business meeting with a Virginia company to discuss a deal that would have resulted in a $1.5 million investment in the Commonwealth. The meeting was followed by several communications into Virginia in furtherance of the negotiations. For constitutional purposes, this amply satisfies the minimum contacts test.

Moreover, the Commonwealth has an interest in providing its citizens with a forum in which to litigate disputes arising from business ventures and in safeguarding its business community against fraud and other illegal practices.

The Court finds that it is not unduly burdensome for the Defendants to litigate this case in Fairfax County, Virginia. It was an unfortunate risk the Defendants assumed when they made a conscious choice to transact business in the Commonwealth.

Accordingly, Defendants' Plea is denied.