SEARCH FORCE, INC., Plaintiff,

v.

DATAFORCE INTERNATIONAL, INC., Defendant.

No. IP 99–1788–C–T/G.

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 19, 2000.

**772**

Todd A. Richardson, Lewis & Kappes, Indianapolis, IN, for Plaintiff.

James M. Landis, Foley & Lardner, Tampa, FL, for Defendant.

## ENTRY DISCUSSING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR ALTERNATIVELY, MOTION TO TRANSFER VENUE

TINDER, District Judge.

Plaintiff, Search Force, Inc. ("Search Force") has brought action against the Defendant, Dataforce International, Inc. ("Dataforce"), alleging that Dataforce has engaged in unfair competition and violated federal trademark law. This matter comes before the court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, or Alternatively, Motion to Transfer Venue. Having considered this motion and the submissions of both parties, the court decides as follows.

### I. Background [1]

Search Force is an Indiana corporation maintaining its principal place of business in Indiana. (Compl. ¶¶ 1, 2; Miller Aff. ¶ 2.) Dataforce is a Florida corporation maintaining its principal place of business in Florida. (Compl. ¶¶ 3, 4; Baran Aff. ¶ 2.) Both corporations provide personnel recruitment and placement services in the specialized area of information technology ("IT"), that is, employment opportunities in the computer hardware and software fields.[2] (Compl. at ¶¶ 3, 4; Miller Aff. ¶¶ 3, 5; Baran Aff. ¶ 2.) Search Force has conducted its IT services under the mark of "Data Force" since October 1990 and registered the mark in August 1999.

---

**1.** These facts are derived from the Plaintiff's Complaint and affidavits submitted by the parties. Where the parties dispute a fact, the dispute is either noted or presented according to the Plaintiff's assertions of fact (not its conclusory allegations). *See* discussion *infra.* This discussion does not constitute any findings of fact with respect to the issues in dispute regarding the merits of the litigation.

**2.** Dataforce apparently focuses exclusively on recruiting and placement for IT positions, while IT recruiting and placement is one division of Search Force's operations. (Miller Aff. ¶ 3; Baran Aff. ¶ 2.)

(Compl. ¶¶ 5, 6, Attach. A; Miller Aff. ¶ 4.) Dataforce was incorporated in 1992, and currently conducts business under the name, "Dataforce International." [3] (Miller Aff. ¶ 18; Baran Aff. ¶ 2; Def.'s Ex. A.) The majority of Dataforce's placements are for positions located in Florida, but approximately two years ago it advertised for one position located in Indiana. (Barran Aff. ¶¶ 2, 5.) Dataforce employs five persons, all residing in Florida, to draft postings and field responses to those postings. (Baran Aff. ¶ 3.) Dataforce does not have any employees, agents, contractors or offices in Indiana, nor does it utilize hard copy advertisements in Indiana. (Baran Aff. ¶¶ 7–9.)

Both Search Force and Dataforce utilize Internet postings, national advertising, and toll-free numbers to reach prospective recruits and employers. (Miller Aff. ¶ 6; Baran Aff. ¶¶ 3, 4.) Both companies pay a fee to post job openings on two interactive online recruiting web sites, owned and operated by third parties—*www.monster.com* ("Monster") and *www.dice.com* ("Dice").[4] (Miller Aff. ¶¶ 7 9; Baran Aff. ¶ 3.) These sites allow users to search job listings according to specified criteria such as position type, geographic location, and employer. (Miller Aff. ¶ 12.) Users also may receive postings of a specified type automatically via e-mail, and utilize links to learn more about a particular position or communicate with a particular employer or recruiter. (Miller Aff. ¶ 11.) Searches on these sites for job postings under "Data Force" produce listings by both Search Force and Dataforce,[5] (Miller Aff. ¶¶ 13–15; Pl.'s Ex. A, B), and at least once a week Search Force has had to provide applicants or employers with a statement to the effect that the two corporations are not affiliated, (Miller Aff. ¶¶ 17, 18). Dataforce also maintains its own web site at *www.dforce.com* which provides information about Dataforce's services as well as toll-free telephone and fax numbers and an e-mail link for obtaining additional information about Dataforce. (Miller Aff. ¶ 22; Baran Aff. ¶ 4; Def.'s Ex. A; Pl.'s Ex. D.) All three web sites are accessible to any person in the world who has Internet access. (Miller Aff. ¶ 10; Baran Aff. ¶ 6.)

On November 19, 1999, Search Force filed this lawsuit based in part on allegations of trademark infringement under Section 43(a) of the Lanham Act, pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1331. Plaintiff alleges, *inter alia*, that the Defendant has created confusion in the marketplace by its unauthorized use of Search Force's registered mark, "Data Force."[6] On January 12, 2000, Dataforce

---

3. Dataforce presumably has conducted business under this name since the date of incorporation. (Baran Aff. ¶ 2.) Defendant's name appears as "DataForce International," with the "F" capitalized, on both its own web site and on some third-party job listings. (Def.'s Ex. A; Pl.'s Ex. A at 2.) The name "Data Force" is used in some fashion by approximately one dozen employment recruiting businesses. (Baran Aff. ¶ 12.)

4. For a background discussion of the Internet and World Wide Web, *see Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1044–45 (9th Cir.1999).

5. Plaintiff's Exhibit A is a copy of a search on Monster using "Dataforce" as the search criteria. The search produced company listings for "Dataforce Corporation," "DataForce International," and "Dataforce." Plaintiff explicitly identifies the listing, "DataForce In-

ternational," as belonging to the Defendant. (Miller Aff. ¶ 14.) However, neither party indicates to which party "Dataforce Corporation" refers, and the court can only assume that "Dataforce" refers to the Plaintiff as those postings are primarily for Indianapolis positions. The search from Dice, provided in Plaintiff's Exhibit B, on its face does not indicate the word(s) utilized in conducting the search, and the results do not indicate the identity of the listing company. Presumably, the listings provide a hyperlink to detailed information about the position and listing company—compare the second listing on page four of Plaintiff's Exhibit B with Plaintiff's Exhibit C.

6. Although this allegation is not restricted to Dataforce's Internet activities, Plaintiff has not alleged any facts indicating Dataforce has had contact with Indiana in any other manner.

filed a Motion to Dismiss claiming that its Internet activities did not create the requisite minimum contacts with Indiana to support this court's exercise of personal jurisdiction over it. (Def.'s Mot. Dismiss ¶¶ 2–5.) In the alternative, Dataforce requested a transfer of venue to the district court in the Middle District of Florida, pursuant to 28 U.S.C. § 1404(a).[7] (Def.'s Mot. Dismiss ¶ 6.) On February 10, 2000 Search Force filed its "Opposition to Defendant's Motion to Dismiss or to Transfer Venue."

## II. Discussion

■ When personal jurisdiction is challenged, a plaintiff bears the burden of demonstrating that personal jurisdiction exists. *See RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir.1997). Any affidavits or other specific evidence offered by the plaintiff must be assumed true for the purposes of determining personal jurisdiction, and any disputed facts are construed in the plaintiff's favor. *See id.* at 1275; *Health Mgmt. Prof'ls, Inc. v.*

*Diversified Bus. Enter., Inc.,* 882 F.Supp. 795, 797 (S.D.Ind.1995). However, vague generalizations or "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Cushing,* 3 F.3d at 1161 n. 5 (7th Cir.1993) (quotation omitted).

■ Jurisdiction exercised on the basis of a federal statute that does not authorize nationwide service of process,[8] requires a federal district court to determine if a court of the state in which it sits would have personal jurisdiction. *See Johnson Worldwide Assocs., Inc.,* 12 F.Supp.2d at 906 (citing *United States v. Martinez De Ortiz,* 910 F.2d 376, 381 (7th Cir.1990)). A two-step analysis is required to determine whether an Indiana state court may exercise personal jurisdiction over a nonresident defendant. *See Anthem Ins. Cos., v. Tenet Healthcare Corp.,* 730 N.E.2d 1227, 1229 (Ind. 2000).[9] The court must first determine whether a defendant's conduct falls within Indiana's long-arm statute.[10]

---

7. The Defendant also objected to the evidentiary material accompanying Plaintiff's Opposition to Defendant's Motions to Dismiss or to Transfer Venue. (Def.'s Reply Supp. Mot. Dismiss at 2–3.) Dataforce argues that the Miller Affidavit relies impermissibly on hearsay, lacks recitation of Mr. Miller's personal knowledge, and is not notarized. (*Id.* at 3.)

It is true that Miller's Affidavit technically is not an affidavit. Although the first sentence declares that Mr. Miller was "duly sworn and upon [his] oath," (Miller Aff. at 1), his statements apparently were not sworn before an officer authorized to administer an oath (such as a notary public) as is necessary for a valid affidavit. *See Pfeil v. Rogers,* 757 F.2d 850, 859 (7th Cir.1985), *cert denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986); *see also Bank of Ill. v. Allied Signal Safety Restraint Sys.,* 75 F.3d 1162, 1169 (7th Cir.1996) (referring to sworn statements as ones made under oath). However, an unsworn declaration may substitute for an affidavit if it subjects the declarant to penalties of perjury. *See* 28 U.S.C. § 1746; *DeBruyne v. Equitable Life Assur. Soc'y,* 920 F.2d 457, 471 (7th Cir. 1990). Mr. Miller does affirm that his representations are true and made "under the penalties for perjury" and, therefore, the "affidavit" satisfies the requirements for an unsworn declaration.

Regarding Defendant's other objections to the Miller Affidavit, an affiant or declarant must provide factual assertions sufficient to demonstrate personal knowledge and support any conclusory allegations. *See Cushing v. City of Chicago,* 3 F.3d 1156, 1161 n. 5 (7th Cir.1993). The court finds it unnecessary to construe defendant's objections as a formal motion to strike all or part of Miller's Affidavit, as it will consider as "evidence" only those statements by Mr. Miller that are factual assertions and not merely vague generalizations or unsupported allegations (all of which appear to be reasonably within the knowledge of someone in Mr. Miller's position—i.e., a senior officer of a corporation (Miller Aff. ¶ 2) (noting Mr. Miller is the president and founder of Search Force)).

8. The Lanham Act does not authorize nationwide service of process. *See* 15 U.S.C. § 1121(a); *Johnson Worldwide Assocs., Inc. v. The Brunton Co.,* 12 F.Supp.2d 901, 906 (E.D.Wis.1998).

9. Indiana Supreme Court Justice Frank Sullivan's discussion of personal jurisdiction in *Anthem* is an excellent treatise on this subject.

10. Indiana's long-arm statute is embodied in Indiana Trial Rule 4 .4(A), which provides in

*Id.* If a basis for personal jurisdiction exists under the long-arm statute, the court must then determine if a defendant's contacts with the forum state satisfy federal due process analysis. *Id.*

Due process requires a defendant to have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *RAR, Inc.*, 107 F.3d at 1277 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). If those contacts are so "continuous and systematic" in nature that a defendant reasonably could foresee being haled into court for any matter, then general jurisdiction may be asserted over the defendant even when the controversy is not related to those contacts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 & n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

In the absence of "continuous and systematic" contacts, specific jurisdiction may be exercised over a defendant if the suit "aris[es] out of or [is] related to the defendant's contacts with the forum." *Id.* at 414 n. 8, 104 S.Ct. 1868; *see Steel Warehouse of Wis., Inc. v. Leach,* 154 F.3d 712, 715 (7th Cir.1998) ("Specific jurisdiction cannot lie without a connection between the defendants' [forum state] activity and the claims alleged in the complaint."). In determining whether specific jurisdiction

should be asserted over a defendant, the court must consider whether the defendant "purposely avail[ed][him]self of the privilege of conducting activities within the forum State ...." such that he "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). In other words, the jurisdictional consequences of particular contacts should come as no surprise to a defendant because of the relationship between his own deliberate actions and the substantive legal dispute between the parties. *See RAR, Inc.,* 107 F.3d at 1278; *see also Burger King Corp.,* 471 U.S. at 475, 105 S.Ct. 2174 (noting that the contacts cannot be "random, fortuitous, or attenuated, or ... the unilateral activity of another party or third person") (citations omitted).[11]

Even a single contact, whether an act performed within the forum state or merely an act having an effect within the state, may be sufficient "to establish specific jurisdiction so long as it creates a 'substantial connection' with the state and the suit is based on that connection." *Anthem Ins. Cos.,* 730 N.E.2d 1227, 1235 (citing *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223

relevant part: "Acts Serving as a Basis for Jurisdiction. Any person or organization that is a nonresident of this state ... submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent: (1) doing any business in this state; (2) causing personal injury or property damage by an act or omission done within this state; (3) causing personal injury or property damage in this state by an occurrence, act or omission done outside this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in this state...."

11. If specific jurisdiction is established, a defendant can defeat personal jurisdiction only by "present[ing] a compelling case that the presence of other considerations would render jurisdiction unreasonable." *Burger King Corp.,* 471 U.S. at 477, 105 S.Ct. 2174. In evaluating the reasonableness and fairness of asserting jurisdiction over the defendant, the court must also consider: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenience and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive policies." *Id.* at 476–77, 105 S.Ct. 2174 (quotations omitted).

(1957)); *see Burger King Corp.*, 471 U.S. at 476 n. 18, 105 S.Ct. 2174.[12] For example, "there can be no serious doubt after *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), that the state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor." *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir.1997) (citing *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership*, 34 F.3d 410, 411–12 (7th Cir. 1994)). However, facts tending to demonstrate the actual injury are required in such cases. *See Janmark, Inc.*, 132 F.3d at 1202 (noting that the injury to a forum business claiming interference with prospective economic advantage did not occur until the defendant induced a customer to cancel its order with the forum business); *cf. GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C.Cir. 2000) (finding conclusory statements and intimations regarding lost revenue insufficient to establish personal jurisdiction under a long-arm statute).

Establishment of personal jurisdiction via Internet activity is an emerging area of law which has yet to be addressed by the Seventh Circuit, *see Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F.Supp.2d 824, 837 (N.D.Ill.2000), and has been addressed by only one Indiana court in the context of a federal due process analysis, *see Conseco, Inc. v. Hickerson*, 698 N.E.2d

816, 818–19 (Ind.App.1998) (declining to apply the *Calder* "effects test" to a trademark infringement case involving a corporation and internet contacts). Circuit Courts of Appeal having addressed Internet activity as a basis for asserting personal jurisdiction include the Second, Fifth, Sixth, Ninth, Tenth, and District of Columbia Circuits. Of those courts, the Second and District of Columbia Circuits addressed the issue only within the confines of state long-arm statutes. *See GTE New Media Servs. Inc.*, 199 F.3d at 1349; *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 29 (2d Cir.1997). The Fifth, Ninth, and Tenth Circuits have found the constitutionality of exercising personal jurisdiction on the basis of Internet activity is proportionate to the nature and quality of that activity as it relates to the defendant's overall contacts with a forum state, and in evaluating Internet activity those courts have relied upon the analytic framework articulated by *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa. 1997).[13] *See Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1248 (10th Cir.2000); *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 337 (5th Cir.1999); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419–20 (9th Cir.1997).

Under the *Zippo* framework, personal jurisdiction clearly is proper where a defendant, over the Internet, enters into contracts or otherwise consummates com-

---

**12.** Potential considerations in evaluating whether a connection is substantial or not include: "(1) whether the claim arises from the defendant's forum contacts, (2) the overall contacts of the defendant or its agent with the forum state, (3) the foreseeability of being haled into court in that state, (4) who initiated the contacts, and (5) whether the defendant expected or encouraged contacts with the state." *Anthem Ins. Cos.*, 730 N.E.2d 1227, 1236.

**13.** The Sixth Circuit case was decided prior to *Zippo*, but it employed a similar analysis. *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1264 (6th Cir.1996) (finding personal jurisdiction where the defendant not only engaged in the nationwide marketing of his software through a server located in the forum state,

but also because the defendant had entered into a contract with that server which was governed by the forum's law). The *Zippo* framework also has been utilized by district courts within the Seventh Circuit, including an unpublished opinion from the Southern District of Indiana. *See, e.g., Euromarket Designs, Inc.*, 96 F.Supp.2d at 837–38 (using the *Zippo* framework to classify a defendant's Internet activities); *Resuscitation Tech., Inc. v. Continental Health Care Corp.*, No. IP 96–1457–C–M/S, 1997 WL 148567 at *5 (S.D.Ind. Mar.24, 1997) (McKinney, J.) (agreeing that "transacting business over the Internet involves examining the level of interactivity, and the commercial nature of the exchange of information that occurs").

mercial transactions with residents of the forum state. *See Zippo Mfg. Co.*, 952 F.Supp. at 1124. *See, e.g., CompuServe, Inc.*, 89 F.3d at 1264 (finding personal jurisdiction where the defendant engaged in the nationwide marketing of his software through a server located in the forum state and had entered into a contract with that server); *Resuscitation Tech., Inc.*, 1997 WL 148567 at *5 (finding personal jurisdiction proper where the content of numerous electronic communications, in addition to other business contacts, gave rise to a contractual dispute between the parties). Personal jurisdiction clearly is not proper where a defendant simply posts information on an Internet web site that is merely accessible to users in the forum state. *See Zippo Mfg. Co.*, 952 F.Supp. at 1124. *See, e.g., Mink v. AAAA Dev. LLC*, 190 F.3d 333, 337 (5th Cir.1999) (construing "passive" web sites to include one that allowed the defendant only to reply to e-mail initiated by site visitors and finding no personal jurisdiction where there was no evidence that the defendant sold products or entered into contracts over the Internet with forum residents).

All other situations where a user can exchange information with the defendant via the Internet require case by case examination of "the level of interactivity and commercial nature of the exchange of information that occurs." *Zippo Mfg. Co.*, 952 F.Supp. at 1124, 1126 (finding personal jurisdiction where an Internet-based news service sold passwords to 3,000 subscribers in the forum state and entered into seven contracts with Internet access providers to furnish its services to those subscribers). Moreover, the defendant's conduct as a whole is evaluated to determine if there is " 'something more' to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir.1998) (quotation omitted) (finding personal jurisdiction where the defendant "purposefully registered Panavision's trademarks as his domain names on the Internet to force Panavision to pay him money."). *See, e.g., Intercon, Inc.*, 205 F.3d at 1248 (finding personal jurisdiction where the defendant continued to route extensive transmissions of email through a server located in the forum state after the defendant had notice that its unauthorized traffic was causing problems for the server).

In the context of trademark infringement claims, where the mark in controversy may be somehow utilized in the defendant's Internet activity, the "something more" also includes some factor making the injury of infringement particularized to the forum state beyond the mere fact that the forum state is the plaintiff's principal place of business. *See, e.g., Cybersell, Inc.*, 130 F.3d at 419–20 (finding no personal jurisdiction in a trademark infringement case where parties did business under the exact same name, but defendant's only contact with the forum state was a noninteractive web site that provided information about its services). For example, the nature of the relevant marketplace may be uniquely concentrated in the forum state. *See Indianapolis Colts, Inc.*, 34 F.3d at 412 (7th Cir.1994) (holding that potential national broadcasts of games with a new Baltimore team using the name "Colts" would result in confusion for Indianapolis Colts fans, the largest concentration of which were "no doubt, Hoosiers"). Circumstances also may indicate that a defendant specifically intended to target the plaintiff by its use of the plaintiff's trademark, thereby raising an inference of "purposeful availment." *See Panavision Int'l, L.P.*, 141 F.3d at 1321 (finding personal jurisdiction where the defendant "purposefully registered Panavision's trademarks as his domain names on the Internet to force Panavision to pay him money."); *cf. Janmark, Inc.*, 132 F.3d at 1201–02 (emphasizing that the defendant purposely availed himself of the forum state when he threatened the plaintiff with an allegedly bogus copyright infringement suit and

threatened plaintiff's customers with lawsuits for derivative infringement which resulted in at least one customer cancelling its order with the plaintiff).

■ Recent district court cases involving Internet activity and trademark infringement claims reinforce the notion that a defendant must avail itself of the forum state in a manner that is somehow more purposeful than an allegedly infringing domain name or use of an allegedly infringing mark on an interactive web site. *See, e.g., Sports Auth. Mich., Inc. v. Justballs, Inc.*, 97 F.Supp.2d 806, 811–12 (E.D.Mich. 2000) (finding personal jurisdiction where defendant operated a virtual store which he did not deny had resulted in sales to entities in the forum state); *Euromarket Designs, Inc.*, 96 F.Supp.2d at 838 (finding personal jurisdiction where defendant not only operated an online catalog from which purchases could be made, but also had additional non-Internet contacts with forum state); *Uncle Sam's Safari Outfitters, Inc. v. Uncle Sam's Army Navy Outfitters–Manhattan, Inc.*, 96 F.Supp.2d 919, 924–25 (E.D.Mo.2000) (finding no personal jurisdiction where defendants' web site featured their retail (and allegedly infringing) name and allowed customers to view merchandise available for order by calling a toll-free telephone number listed on the site, but there was no evidence that anyone from the forum state had contacted the web site); *Nissan Motor Co., Ltd. v. Nissan Computer Corp.*, 89 F.Supp.2d 1154, 1159 (C.D.Cal.2000) (finding personal jurisdiction where defendant not only used

plaintiff's trademark as its domain name, but also had contracts with five companies in the forum state); *JB Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F.Supp.2d 1363, 1367–68 (S.D.Fla.1999) (no personal jurisdiction where defendant had a pending application to do business in the forum state and three interactive web sites (but no indication that a forum resident ever interacted with the defendant on any site)); *Rannoch, Inc. v. Rannoch Corp.*, 52 F.Supp.2d 681, 686 (E.D.Va.1999) (holding that exercising personal jurisdiction would exceed constitutional bounds where evidence of the defendant's "contacts" were a web site with the allegedly infringing trade name, a toll-free number, fax number, e-mail address, interactive comment form, hypertext links, interactive form for direct placement of classified ads with defendant, and no showing of how the defendant distinctly availed itself of the forum state differently than of all other states having residents with access to the site).[14]

## B. Defendant's Contacts and Indiana's Long–Arm Statute

Search Force argues that Dataforce's Internet activities come within the sweep of Trial Rule 4.4(A) under any one of subsections (1)-(3). *See supra* note 10. However, Trial Rule 4.4(A) is satisfied if a defendant's contacts with Indiana fall into any of any of the Rule's categories. *See Anthem Ins. Cos.*, 730 N.E.2d 1227, 2000 WL 730743, at *3. The court assumes for the sake of argument that Dataforce's ad-

---

**14.** The majority of cases relied upon by Search Force are in a relatively early line of district court decisions which essentially presumed personal jurisdiction where a defendant used an interactive web site and did not purposely avoid the forum state. *See, e.g., Inset Sys., Inc. v. Instruction Set, Inc.* 937 F.Supp. 161, 165 (D.Conn.1996). Such a broad reading of minimum contacts in the internet context is not explicitly rejected by the *Zippo* framework, but is noted to "represent the outer limits of personal jurisdiction based on the Internet." *Zippo Mfg. Co.*, 952 F.Supp. at 1125. Moreover, the *Inset* rationale also has been treated with

disfavor because it effectively creates nationwide jurisdiction without an explicit showing of purposeful availment. *See Rannoch, Inc.*, 52 F.Supp.2d at 686–87. It also should be noted that several cases cited by the Defendant found of personal jurisdiction to exist on the basis of at least some actual contacts between forum residents and a defendant. *See, e.g., Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328, 1333 (E.D.Mo.1996) (finding personal jurisdiction where the defendant had transmitted information about its services into the forum state approximately 131 times).

vertisement for a position located in Indiana could be construed as "doing any business" in the state and is arguably connected to Search Force's trademark infringement action. Thus, the court finds that personal jurisdiction over Dataforce is conferred by Indiana Trial Rule 4.4(A)(1).[15]

## C. Defendant's Contacts and Federal Due Process

■ Plaintiff contends that Dataforce's Internet activity is sufficient to establish either general or specific jurisdiction. With regard to general jurisdiction, Search Force contends that Dataforce has engaged in "regular and continuous solicitation of business" in Indiana through the maintenance of its own web site and through its utilization of interactive internet services such as Monster and Dice. (Pl.'s Opp'n Def.'s Mot. Dismiss at 9.) The solicitation is most evident, Search Force maintains, in Dataforce's regular posting of job openings on Monster and Dice— "Monster and Dice are not merely outlets in which Defendant advertises its services, but rather are instrumentalities through which Defendant conducts its business. When a posting by Defendant on Monster or Dice reaches an IT professional in Indiana, Defendant without more has completed a business solicitation within the state." (Pl.'s Opp'n Def.'s Mot. Dismiss at 9–10.) The court disagrees.

Dataforce's own web site or the sites maintained by Monster and Dice have not been shown to allow for consummation of a business transaction-i.e., the actual placement of an IT professional by Dataforce in a position for which it had advertised. No evidence has been produced that communication via these sites has occurred between Dataforce and potential IT recruits or employers residing in Indiana, let alone that

any communications occurred which gave rise to a contractual or on-going business relationship between Dataforce and an Indiana resident or entity. The only distinct contact with Indiana appears to be Dataforce's advertisement, over two years ago, for a single position located in Indiana. Even here, it is not known whether a placement was actually made, whether the relationship with the employer was sought out by Dataforce, or whether that employer was incorporated or had its principal place of business in Indiana. The Plaintiff has not demonstrated that Dataforce has had any contacts (electronic or otherwise) with other employers regarding Indiana positions. Thus, the court finds that Search Force has asserted no facts that indicate the level of interactivity and commercial nature of Dataforce's web site or the Monster and Dice sites has resulted in the exchange of any information that shows Dataforce purposefully directed its activity in a substantial way to Indiana.

■ Search Force also contends that personal jurisdiction over Dataforce does not rely solely on the Defendant's business contacts with Indiana. (Pl.'s Opp'n Def.'s Mot. Dismiss at 4.) Specific jurisdiction is said to be established by Dataforce's tortious conduct in which it uses of the "trade name 'Dataforce' in direct competition with Plaintiff's business. That conduct has occurred in Indiana and has caused significant injury to Plaintiff within Indiana." (*Id.*) Although the court agrees that there is a general connection between Dataforce's Internet activity and Search Force's lawsuit, the court is not persuaded that Dataforce's Internet presence on interactive web sites infers that the alleged injury occurred within Indiana.[16]

---

**15.** Because Trial Rule 4.4(A) arguably is satisfied under subsection (1), the court need not predict whether Indiana courts would find Dataforce's Internet activity to satisfy subsections (2) and (3).

**16.** Search Force has alleged no injury beyond generalized assertions of marketplace confusion that have required it to formulate a statement to the effect that the Data Force division of Search Force is not affiliated with Dataforce International.

The court has noted already that Dataforce's Internet activity has not been shown to have actually resulted in any communication between Dataforce and potential IT recruits or employers residing in Indiana, or that the one-time advertisement for an Indiana position two years ago created any marketplace confusion. Moreover, the alleged marketplace confusion is not particularized to Indiana beyond the mere fact that Search Force maintains its principal place of business here. Plaintiff's general assertions of confusion among potential recruits, employers, and Search Force's multinational and international clients are insufficiently detailed to allow the conclusion that these persons or entities reside in Indiana, or that Search Force's operations, growth, or revenues have been negatively affected in a way that would give some indication that Dataforce's activities have had an actual effect in Indiana. Additionally, no circumstances point to a logical concentration of the relevant marketplace in Indiana or that Dataforce specifically targeted Search Force in its use of the mark in controversy. Indeed, Search Force has made much of its national and international market, and Dataforce is only one of a dozen companies utilizing the mark in controversy. There is no indication that Dataforce was aware of Search Force's IT division in Indiana prior to Dataforce's 1992 incorporation in Florida, nor do the circumstances of the case make it apparent when or how Dataforce might have first came to know of the possible trademark infringement. Thus, the court does not find that Dataforce's Internet activity has created a substantial connection with Indiana such that it would have reasonably anticipated being haled into court here.

### III. Conclusion

Having found that the exercise of personal jurisdiction permitted by Indiana Trial Rule 4.4(A)(1) does not withstand federal due process analysis, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED**.

ALL OF WHICH IS ORDERED this 19th day of July 2000.