NORTH AMERICAN VAN LINES,
INC., Plaintiff,

v.

A. COLONIAL MOVING & STORAGE
COMPANY, INC., Defendant.

No. 1:03–CV–147.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Aug. 22, 2003.

Branch R. Lew, Melissa G. Hawk, Timothy W. DeGroote, Hunt, Suedhoff, Kalamaros LLP—FW/IN, Fort Wayne, IN, for Plaintiff.

Alan L. VerPlanck, James Fenton, Eilbacher, Scott Inc, Fort Wayne, IN, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

COSBEY, United States Magistrate Judge.

### I. INTRODUCTION

Before the Court is the defendant A. Colonial Moving & Storage Company, Inc.'s ("Colonial") May 21, 2003, motion to dismiss for lack of personal jurisdiction. *See* Fed.R.Civ.P. 12(b)(2). The plaintiff, North American Van Lines, Inc. ("NAVL"), submitted a response brief on June 19, 2003, and Colonial replied on July 25, 2003.

The evidence consists of the affidavits of Colonial's president, Guy Milazzo ("Milazzo") ("Milazzo Aff. ¶ ——"), and NAVL's Director of Agency Services, Tom Lambert ("Lambert") ("Lambert Aff. ¶ ——"), and NAVL's Director of Operations, John Kaufman ("Kaufman") ("Kaufman Aff. ¶ ——"), as well as the Reply Affidavits of Milazzo ("Milazzo Reply Aff. ¶ ——"), John Reynolds ("Reynolds") ("Reynolds Aff. ¶ ——"), Colonial's Operation Manager, and Andrew Lettieri ("Lettieri") ("Lettieri Aff. ¶ ——"), former principal and President of Colonial, together with other evidence.

For the following reasons, Colonial's motion to dismiss will be GRANTED.

### II. THE PROCEDURAL AND FACTUAL BACKGROUND

NAVL originally filed this breach of contract action in the Allen County, Indiana Superior Court, and Colonial removed it to this Court on May 2, 2003 based on diversity jurisdiction. 28 U.S.C. §§ 1332 & 1441. Subsequently, Colonial filed the present motion to dismiss on May 21, 2003, alleging that the Court has neither general jurisdiction nor specific personal jurisdiction over it.

To somewhat oversimplify, NAVL contends that Colonial, its exclusive agent for the Hackensack, New Jersey area, breached an Agency Agreement (the "Contract") when it refused to pay commissions owed North American and improperly billed clients. (Compl.¶ 8.) After NAVL gave written notice of this alleged breach and Colonial refused to remedy or cure, NAVL terminated the Contract and initiated this suit.

NAVL, incorporated in Delaware and with its principal place of business in Ft. Wayne, Indiana, provides transportation services to the general public, especially the transportation of household goods. (Lambert Aff. ¶ 5, 8). To further its business, NAVL contracts with independent agents throughout the United States who then represent NAVL in the local markets servicing customers and soliciting business. NAVL solicited Colonial as an agent and that relationship has continued for the past thirty-five (35) years. (*Id.*, Lettieri Aff. ¶ 3.) However, all functions of Colonial's operations as NAVL's agent were performed in Hackensack, New Jersey. (*See* ¶ 7 of Addendum to the Contract). The contract further specified that Delaware law would govern the relationship of the parties. (*See* ¶ 13.7 of the Contract, Exh. A–1 to Lambert Aff.)

The prior written agency contract between NAVL and Colonial expired in 1995. (Lettieri Aff. ¶ 7). The present version of the agreement of the parties, signed on September 26, 1996, was primarily negotiated at a meeting between NAVL and Colonial in New York City, where the parties renewed their long-standing relationship for another seven (7) years.[1] (Letti-

eri Aff. ¶ 10, Milazzo Reply Aff. ¶ 24). In fact, NAVL approached Colonial about renewing the contact and provided a number of incentives to entice Colonial to renew the relationship. (Milazzo Reply Aff. ¶ 25). In short, the contract was not solicited, negotiated, or executed in Indiana. (Lettieri Aff. ¶ 11).

As part of the contract, NAVL provided a number of support services to Colonial from its Indiana location. Once Colonial would "book" a shipment with a customer, it would "register" the customer and shipment information in NAVL's computer system, to which Colonial had direct access. (Kauffman Aff. ¶ 13). Then, NAVL's dispatch department would assign a driver and a truck to the shipment, based upon the availability of Colonial drivers and the length of the haul. If no Colonial driver was available, NAVL would secure a driver from another agent or hire an owner-operator to deliver the shipment. *Id.*

Once assigned, the driver receives the shipment's bill of lading from Colonial and proceeds to the customer's residence to load the shipment. When the shipment is delivered at its destination, the driver forwards the bill of lading and all additional paperwork to NAVL's Revenue Processing Department ("RPD") for processing. (Kauffman Aff. ¶ 14). The RPD maintains and services an account for each agent, including Colonial. (Lambert Aff. ¶ 15). Once RPD receives and processes the paperwork for a completed Colonial shipment, RPD then pays Colonial's commission to its account. RPD would also produce periodically a "commission statement" that reflected all activity, both

---

1. NAVL indicates that the contract was the result of several months of negotiation and points to the attached correspondence to Lambert's affidavit. *See* Lambert Aff. ¶ 12. However, the only correspondence attached is one letter from NAVL to Colonial making an offer of contract renewal. *Id.* This does nothing to contravene Colonial's assertion that the Contract (i.e. Colonial's acceptance of NAVL's offer) was ultimately negotiated and executed in New York.

credits and debits, posted to Colonial's account. *Id.* If Colonial disputed any of the activity on the commission statements, it would contact the RPD directly through a computerized messaging system, maintained by NAVL, to resolve any disputes.

In addition, under the Contract, Colonial provided NAVL's toll-free customer service phone number to its customers and NAVL's Customer Service Department would receive complaints from Colonial's customers and attempt to resolve them as well as field any other questions they may have. (Lambert Aff. ¶ 19).

Colonial also relied upon NAVL to provide the necessary licensing and registration needed to transport customer shipments between states. Without these licenses and registrations, Colonial would be unable to transport shipments outside of New Jersey. (Lambert Aff. ¶ 8, 22, Kauffman Aff. ¶ 7). Colonial drivers were also able to access NAVL's satellite tracking system when transporting shipments, which allowed Colonial to communicate and track the whereabouts of its drivers. (Lambert Aff. ¶ 23). In addition, occasionally, Colonial drivers would come to Indiana to receive training and Colonial would send their drivers' logs so NAVL could receive and maintain them in accordance with federal regulations.

Further, as an incentive to resign the Contract, NAVL supplied to Colonial in New Jersey, a semi-tractor and two long moving trailers (hereafter "rolling stock"), all of which were plated in Indiana. The parties agreed that if the Contract was cancelled prior to its natural expiration in seven years, Colonial was obligated to return the rolling stock, in good condition and with clear title, within thirty (30) days of termination. However, after NAVL cancelled the Contract, Colonial refused to return the rolling stock and NAVL is therefore suing Colonial for conversion as part of this action. (Complaint ¶¶ 14–17).

## III.  DISCUSSION

### A.  Personal Jurisdiction Principles

A federal district Court exercising diversity jurisdiction has personal jurisdiction over a nonresident defendant "only if a court of the state in which it sits would have such jurisdiction." *Steel Warehouse of Wisconsin, Inc. v. Leach,* 154 F.3d 712, 714 (7th Cir.1998); *Wilson v. Humphreys Ltd.,* 916 F.2d 1239, 1243 (7th Cir.1990); *Andersen v. Sportmart, Inc.,* 179 F.R.D. 236, 238 (N.D.Ind.1998) (Cosbey, Magis.J.). Indiana follows a two-step approach to personal jurisdiction, requiring first a look to whether Colonial's contacts fall within one of the enumerated acts of the state's long-arm statute, Ind. Tr. R. 4.4(A).[2] *Anthem Insurance Cos. v. Tenet Healthcare Corp.,* 730 N.E.2d 1227, 1232 (Ind.2000). If those contacts fall within the statute, we must next determine whether they are sufficient to satisfy federal due process concerns.[3] *Id. Interna-*

---

**2.**  Ind. Trial Rule 4.4(A) performs the same function as a longarm statute. Although technically a trial rule, the Court will refer to it throughout this opinion as the "long-arm statute."

**3.**  Indiana Trial Rule 4.4(A) provides, in relevant part,

Any person or organization that is a nonresident of this state ... submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent:(1)Doing any business in this state ... (3) Causing ... property damage in this state by an occurrence, act or omission done outside this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in this state[.]

Ind. Tr. R. 4.4(A)(1) & (3).

tional Medical Group, Inc. v. American Arbitration Assoc., Inc., 312 F.3d 833, 845 (7th Cir.2002); Williams v. REP Corp., 302 F.3d 660, 666 (7th Cir.2002).

Because Colonial challenges personal jurisdiction, NAVL has the burden of demonstrating that such jurisdiction exists. See RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir.1997). For purposes of this motion, the Court will assume that the affidavits or other evidence NAVL offers are true, and will also construe any disputed facts in its favor. Id. at 1275.

■ Due process considerations require a nonresident defendant to have "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The Supreme Court has interpreted this as creating a two-part test, focusing first on whether the defendant's, such as Colonial's, contacts with Indiana are sufficient to establish that it could "reasonably anticipate being haled into court there," and second, on whether the exercise of personal jurisdiction would offend "traditional notions of fair play and substantial justice" by weighing a variety of interests. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

The substance of the "minimum contacts" analysis depends on whether NAVL can satisfy the "minimum contacts" requirements of either "general" or "specific" personal jurisdiction over Colonial. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn. 8–9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

■ When a defendant's contacts with the forum state are unrelated to the subject matter of the lawsuit, general personal jurisdiction may be established if its con-

tacts are so continuous and systematic that the defendant could reasonably foresee being haled into court in that state for any matter. Id. at 414–15, 104 S.Ct. 1868; International Medical, 312 F.3d at 846; Anthem, 730 N.E.2d at 1234. Courts have identified a variety of factors to consider in making this determination including the volume of the corporation's business in the state, whether the corporation maintains an office in the state, whether the corporation sends agents into the state to conduct business or advertises and solicits business in the state. Helicopteros, 466 U.S. at 417–18, 104 S.Ct. 1868; Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 445–46, 72 S.Ct. 413, 96 L.Ed. 485 (1952); Andersen, 179 F.R.D. at 240–41. "No one factor is dispositive, but the standard for establishing general jurisdiction is fairly high." See Wilson, 916 F.2d at 1245.

■ By contrast, "specific jurisdiction" exists where the defendant has had only "minimum contacts" with the forum state but the cause of action arises from those contacts. See RAR, 107 F.3d at 1277. "[T]he defendant's conduct and connection with the forum state [must be] such that he should reasonably anticipate being haled into court there" to answer for his conduct. World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). See also RAR, 107 F.3d at 1277 (stating that the court must consider "whether, by traditional standards, [a defendant's contacts with the forum] would make personal jurisdiction reasonable and fair under the circumstances"). However, the act must be purposeful, not a "random or fortuitous or attenuated contact[ ], or . . . the unilateral activity of another party or a third person." Burger King, 471 U.S. at 475, 105 S.Ct. 2174 (internal quotations and citations omitted); Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co., 18

F.3d 389, 394 (7th Cir.1994) ("A defendant must have derived some benefit from the state to justify being forced to litigate in what is likely to be an inconvenient forum"); *See also, RAR,* 107 F.3d at 1277–78.

■ Contacts are "acts physically performed in the forum state and acts performed outside the forum state that have an effect within the forum." *Anthem,* 730 N.E.2d at 1234 (quoting 16 MOORE'S FEDERAL PRACTICE AND PROCEDURE § 108.42[2][a] (Matthew Bender 3d ed.2000)). The Supreme Court has held that a single contact with a forum state may be enough to establish specific personal jurisdiction, so long as it creates a "substantial connection" with the forum state and the suit is based on that connection. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Snyder v. Smith,* 736 F.2d 409, 416 (7th Cir.1984) (single act may be sufficient to confer jurisdiction as long as the cause of action arises from that act).

■ If the Court finds contacts sufficient to establish personal jurisdiction, either general or specific, it must then determine if exercising personal jurisdiction over Colonial will "offend traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154, 90 L.Ed. 95 (citations and internal quotations omitted). To make this determination, the Court must balance five (5) factors: (1) the burden on Colonial; (2) Indiana's interest in adjudicating the dispute; (3) NAVL's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and, (5) the shared interest of the several States in furthering fundamental substantive social policies. *Burger King,* 471 U.S. at 476–77, 105 S.Ct. 2174, 85 L.Ed.2d 528.

■ However, once NAVL establishes that there are sufficient minimum contacts, Colonial then has the burden of showing that asserting jurisdiction is unfair and unreasonable and "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

With these standards in mind, the Court will now address the parties' arguments.

## B. Analysis

■ The Court must first determine if Colonial's contacts fall within one of the enumerated acts of Indiana's long-arm statute. *Anthem,* 730 N.E.2d at 1232. In that regard, NAVL argues that this Court can assert jurisdiction over Colonial under Indiana Trial Rule 4.4(A)(1) because Colonial was "doing . . . business in this state" when it used NAVL's computer system to book and register shipments, relied upon NAVL to bill, collect, and account for services rendered to customers, used NAVL's satellite system to dispatch and track drivers, engaged in nearly daily phone and electronic contact with NAVL, and sent at least one driver to NAVL's facilities in Indiana for training.[4]   (Docket # 25, p. 2).

---

4. NAVL does not argue an alternative provision of the long-arm statute (i.e. whether Colonial's alleged conversion of NAVL's rolling stock amounts to "property damage" in this state, *see* Indiana Trial Rule 4.4(A)(3)). This is probably due to the fact that the alleged conversion occurred in New Jersey and not in Indiana, and therefore no property damage occurred in Indiana. *See Wenz v. Memery* *Crystal,* 55 F.3d 1503, 1508 (10th Cir.1995); *American Sav. Bank v. Cheshire Management Co.,* 693 F.Supp. 42, 46 (S.D.N.Y.1988) ("In cases of conversion, the injury is deemed to occur in the place where the defendant's acts respecting the property are committed.") (citations omitted) (internal quotation marks omitted).

On the other hand, Colonial argues that the Court cannot assert jurisdiction because it did not solicit NAVL for the Contract nor was the Contract negotiated, discussed, or signed in Indiana. In addition, Colonial argues that all the services performed by NAVL was nothing more than the unilateral performance of its own obligations under the Contract or otherwise in furtherance of its own interstate transportation business and therefore does not equate with Colonial actually doing business in Indiana.

Indeed, what NAVL essentially argues is that when it performed its part of the Contract, it was doing so at Colonial's behest, which translates, in NAVL's view, to Colonial doing business in Indiana. However, this argument runs afoul of the generally accepted proposition, at least in this jurisdiction, that if all an in-state corporation is doing is unilaterally performing its contractual obligations, this is insufficient to confer jurisdiction on the out-of-state defendant. *See SMC Corp. of America v. King Industrial*, 2003 WL 21398103, *4 (S.D.Ind. June 12, 2003) *citing Lakeside Bridge & Steel Co. v. Mountain State Const. Co., Inc.*, 597 F.2d 596 (7th Cir. 1979) (The performance of contract obligations by plaintiff in forum state not sufficient to confer jurisdiction over an out-of-state defendant.)

Perhaps the legal principle upon which this proposition is based was best articulated by the Seventh Circuit in *IDS Life Insurance Co. v. SunAmerica Life Ins. Co.*, in which that Court analyzed Illinois' "doing business" long-arm provision, which is analogous to Indiana's, and concluded that it is meant to "pick[ ] out those nonresident businesses, in so far as the benefits they derive from state services are concerned, [such] that it would give them an undeserved competitive advantage if they could escape having to defend their actions in local courts." *IDS Life Insur-*

*ance Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540–41 (7th Cir.1998). *See also SMC Corp. of America*, 2003 WL 21398103, *4. Thus, the Seventh Circuit concluded that since the defendant in that case did not have any offices, did not own property, nor make any sales in the forum state, and did not derive any benefits from state services, it was not "doing business" there. *IDS Life Insurance Co.*, 136 F.3d at 541.

Following that same reasoning, the Southern District of Indiana in *SMC Corp. of America* found that it could not exercise jurisdiction over a defendant where the contract between the Indiana plaintiff and the Texas defendant was negotiated in Texas and where the defendant had no offices, employees or bank accounts in the state of Indiana. *SMC Corp. of America*, 2003 WL 21398103, *4. Although the plaintiff argued that jurisdiction was proper because the Texas defendant placed orders for products made and shipped to it from Indiana, those actions were merely, in the district court's view, the plaintiff's unilateral performance of its own obligations under the contract and were insufficient to establish jurisdiction. *Id.*

Along these lines, Colonial has no Indiana office, property, nor does it make any sales here and therefore seemingly derives no benefits from Indiana state services. Moreover, the contract upon which the plaintiff's cause of action is based was solicited and negotiated in New Jersey or New York and contemplates the application of Delaware law. Finally, Colonial's contacts with Indiana were exclusively to ensure, or facilitate, NAVL's performance of its own contract obligations. Consequently, based on all these factors, Colonial was seemingly not "doing any business" in the State of Indiana under Ind. Tr. R. 4.4(A)(1) (making an analysis of the due process step for personal jurisdiction

unnecessary), unless NAVL can somehow demonstrate a legal basis by which it could be inferred that Colonial was actually doing business here.

· In that regard, NAVL first cites *Search Force, Inc. v. Dataforce International Inc.*, 112 F.Supp.2d 771 (S.D.Ind.2000) for the proposition that Colonial was doing business in Indiana. However, *Search Force* involved a trademark infringement suit where the Indiana plaintiff, a personnel recruitment firm, sued one of its competitors, a Florida corporation, because the latter advertised an Indiana job opening on the Internet. Judge Tinder concluded that this type of solicitation was sufficient to "doing any business" in Indiana. *Id.* at 778–79. However, *Search Force* is unlike this case because Colonial does not advertise in Indiana, seeks no customers here, and actually has not transported into (as compared to possibly through) the State of Indiana. Consequently, *Search Force* offers no basis to find that Colonial was "doing business" here.

NAVL also string cites four, easily distinguishable cases for the proposition that Colonial was doing business in Indiana: *Tom–Wat v. Fink*, 741 N.E.2d 343 (Ind. 2001), *American Economy Ins. Co. v. Felts*, 759 N.E.2d 649 (Ind.Ct.App.2001), *Anthem Insurance Co. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1232 (Ind. 2000), *Woodmar Coin Center, Inc. v. Owen*, 447 N.E.2d 618 (Ind.Ct.App.1983).

In *Woodmar Coin Center*, the defendant initiated the contact with the Indiana plaintiff and after substantial negotiations over the telephone, entered into a contract with him. These facts alone were suffi-cient for the Indiana Court of Appeals to find jurisdiction. *Woodmar*, 447 N.E.2d at 621. However, in sharp contrast, none of those factors is present here because it was NAVL that initiated and solicited the renewal contact with Colonial and all the negotiations occurred outside the State of Indiana. (*See, e.g.,* Lettieri Aff. ¶ 10–11, Milazzo Reply Aff ¶ 25).

Moreover, *Anthem* is not persuasive either since in that case, the Indiana Supreme Court found that one defendant's "several business trips to Indiana and transactions with Indiana businesses ..." satisfied the "doing any business" requirement. *Anthem*, 730 N.E.2d at 1239. Here, Colonial made no business trips to Indiana and apparently has had no transactions with any other Indiana businesses.[5]

Perhaps the closest NAVL can ultimately come to establishing that Colonial was "doing business" in the State of Indiana is when it contends that it would directly bill Colonial inter-state customers and then after processing, would remit the appropriate commission payments to Colonial. (*See* Lambert Aff. ¶ 16). This billing and collection function only really becomes relevant in the context of *Anthem*, where the Indiana Supreme Court found that some out-of-state hospitals were doing business in Indiana when they sent correspondence to an Indiana insurance company seeking to obtain the insurance benefits of insured patients who they were treating outside Indiana. *Anthem*, 730 N.E.2d at 1241. However, this activity is distinguishable from Colonial's involvement because NAVL's unilateral billing, collection and accounting efforts were nothing more than

---

**5.** NAVL in its response brief argues, without any citation to the record, that "Colonial representatives would occasionally visit the Fort Wayne office for training, social engagements, business meetings and the like." *(See* Response Br. ¶ 7–8). However, apart from an isolated training session for one truck driver, the record does not reveal the basis for this assertion and in fact the opposite appears true. (*See* Milazzo Aff. ¶¶ 12–13) (the last visit any Colonial representative made to NAVL was by Milazzo in 1993 or 1994 for a social event hosted by NAVL.)

 

the fulfillment of its responsibilities under the Contract. (*See* Lambert Aff. ¶ 6, Exh. A–1, § 7). In that regard, the actual principle demonstrated here is much closer to that recognized in *SMC Corp. of America,* 2003 WL 21398103, *4, where the court found that the defendant was not doing business in the State of Indiana. *Anthem,* on the other hand, demonstrates that solicitations for payment directed to an Indiana third-party insurer, from an out-of-state hospital are in furtherance of the hospital's business, and are not merely the unilateral undertakings of the forum plaintiff. Therefore, NAVL's activity does not equate to Colonial "doing business" here.

Finally, *Tom–Wat v. Fink,* 741 N.E.2d 343 (Ind.2001) and *American Economy Ins. Co. v. Felts,* 759 N.E.2d 649 (Ind.Ct. App.2001) are seemingly cited for the proposition that the Indiana Supreme Court in *Tom–Wat,* after *Anthem,* "re-extended the reach of the long-arm statute to the boundaries of due process … at least as it applies to the 'doing any business' element of Indiana's Long–Arm Statute." *American Economy Ins. Co.,* 759 N.E.2d at 658. However, as Judge McKinney, who authored *SMC Corp., supra,* observed in *Fanimation Design & Mfg. Inc. v. Aloha Housewares, Inc.,* 2003 WL 1903353 (S.D.Ind. March 27, 2003), that so-called re-extension of the long-arm statute only applies if the defendant is doing such unrelated business in the state that it would be consistent with due process to exercise general jurisdiction. However, as noted *supra,* there is no evidence that Colonial had any contacts with this state (apart from its dealings with NAVL) and therefore this principle, as with general jurisdiction, does not apply. *Helicopteros,* 466 U.S. at 417–18, 104 S.Ct. 1868.

Consequently, because NAVL has failed to demonstrate that Colonial was actually "doing any business" in Indiana under Ind.

Tr. R. 4.4(A)(1), the Court cannot exercise jurisdiction over Colonial and NAVL's complaint must be dismissed.

## CONCLUSION

For the foregoing reasons, Colonial's Motion to Dismiss NAVL's complaint is GRANTED and the complaint is hereby DISMISSED.